**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Ty KINNEY, Appellant**

**No. 346 MDA 2016**

Superior Court of Pennsylvania.

Submitted February 13, 2017

FILED MARCH 13, 2017

Ryan C. Gardner, Williamsport, for appellant.

Eric R. Linhardt, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

BEFORE: GANTMAN, P.J., SHOGAN and STRASSBURGER,* JJ.

OPINION BY SHOGAN, J.:

Ty Kinney ("Appellant") appeals from the judgment of sentence entered on Feb-

* Retired Senior Judge assigned to the Superior Court.

ruary 3, 2016, in the Court of Common Pleas of Lycoming County. We affirm.

The trial court set forth the history of this case as follows:

On January 26, 2015, Matthew Alexander and Daniel Pepperman, who are brothers, were walking on High Street when three individuals turned onto High Street from Rose Street. Alexander and Pepperman moved over so these individual[s] could pass by them. Two of the individuals passed, but the third individual, who both Alexander and Pepperman subsequently identified as Appellant, hit Alexander in the head with brass knuckles and shoved him to the ground. Appellant then kicked Alexander in the side and hit him in the head. One of the other individuals also started kicking Alexander until Pepperman started to run away to get help. Appellant demanded that Alexander give him everything he had. Alexander gave Appellant a pack of cigarettes, his wallet, and an orange Taurus lighter.

The other individuals chased Pepperman, tripped him and then began kicking and punching Pepperman in the side and the face. Appellant, who was wearing a dark coat with fur on it and Timberland boots, got off of Alexander and participated in the assault of Pepperman.

Pepperman saw a tan boot come towards him and strike his face "non-stop until his eye was swollen shut." He was kicked and punched repeatedly until he lost consciousness. Alexander was afraid his brother was going to die, so Alexander yelled for the individuals to stop and "play acted" like he was pulling a gun from his waistband and said he would kill all of them if they didn't stop. The individuals then ran away.

When Pepperman regained consciousness, he was spitting blood and his nose felt like it was completely congested but when he attempted to blow his nose, nothing but blood came out. The beanie he had been wearing was missing.

The police were called. The police observed footprints in the snow, which they followed to 655 Wildwood Boulevard. They saw males at different times looking out of the windows of the residence at 655 Wildwood Boulevard. The police knocked on the door and made contact with Stacy Fillman. The police told Fillman that they were investigating a serious crime scene, but she told them to come back the next day. The police told Fillman that wasn't an option: she could either consent to let them in or they would get a search warrant. Fillman slammed the door in their face.

The police obtained a search warrant for the residence. They took three males out of the residence, including Appellant. The police discovered a soaking wet pair of boots with the same sole or tread pattern as the footprints in the snow. They also found an orange Taurus lighter in the pocket of a long, green coat with fur around the hood, homemade brass knuckles in an upstairs bedroom dresser drawer, and a beanie in the dining room.

Appellant was arrested and charged with eight counts of robbery, two counts of aggravated assault, two counts of simple assault, two counts of theft, two counts of receiving stolen property, two counts of conspiracy and one count of prohibited offensive weapons.

A jury trial was held on November 17, 2015. The jury convicted Appellant of seven counts of robbery, two counts of aggravated assault, two counts of simple assault, one count of theft, one count of receiving stolen property, and one count of possession [of] a prohibited offensive weapon.

On February 3, 2016, the court sentenced Appellant to incarceration in a state correctional facility for 9 to 25 years, consisting of 7½ to 20 years for aggravated assault, a felony of the first degree, and 1½ to 5 years for possessing a prohibited offensive weapon (brass knuckles), a misdemeanor of the first degree. The remaining convictions either merged for sentencing purposes or the court imposed a concurrent sentence.

Appellant did not file any post sentence motions. He did, however, file a notice of appeal on February 26, 2016. Trial Court Opinion, 9/30/16, at 1–3. Subsequently, Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues for our consideration:

1. Whether the evidence was sufficient to sustain a verdict of guilty beyond a reasonable doubt that it was [Appellant] who committed the offense: namely, two counts of aggravated assault, one count of prohibited offensive weapon, and seven counts of robbery.

2. Whether the prosecution committed prosecutorial misconduct by misrepresenting plea negotiations with a cooperating co-defendant.

3. Whether the cooperating co-defendant committed perjury when confronted about the plea negotiations between th[e] co-defendant and Commonwealth attorney at the time of trial.

Appellant's Brief at 7 (full capitalization omitted).

Appellant's first issue purports to challenge the sufficiency of the evidence supporting his convictions for aggravated assault, robbery, and prohibited offensive weapons.[1] Appellant's Brief at 12. Specifi-cally, he questions the sufficiency of the evidence identifying him as the assailant and the sufficiency of the evidence establishing an attempt to cause serious bodily injury. *Id.* at 13–16, 16–18.

■ This Court has recognized that:

Evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Ovalles,* 144 A.3d 957, 969–970 (Pa. Super. 2016) (quoting *Commonwealth v. Orr,* 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*)) (internal quotation marks and citations omitted). Moreover, "[a] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." *Commonwealth v. Charlton,* 902 A.2d 554, 561 (Pa. Super. 2006).

■ Here, Appellant asserts that the Commonwealth's evidence failed to prove beyond a reasonable doubt that he assaulted Mr. Alexander and Mr. Pepperman. Appellant's Brief at 13. In support of this assertion, Appellant argues that the vic-

1. 18 Pa.C.S. §§ 2702(a)(1), 3701(a)(1), and 908(a).

tims provided "unconvincing" and "vague" identifications and "inconsistencies regarding the Commonwealth's physical evidence." *Id.* at 13–15. Such claims are directed entirely to the credibility of the victim's testimony, and, as such, challenge the weight, not the sufficiency, of the evidence. *Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011).

The record reveals that Appellant has failed to raise before the trial court a challenge to the weight of the evidence in either an oral or written motion for a new trial pursuant to Pa.R.Crim.P. 607.[2] Therefore, he has waived this claim. *Id. See also Commonwealth v. Lopez*, 57 A.3d 74, 80–81 (Pa. Super. 2012) (holding that, pursuant to Pa.R.Crim.P. 607, a challenge to the weight of the evidence must be raised with the trial judge or it will be waived).[3]

Additionally, Appellant asserts that the "Commonwealth failed to establish that Appellant attempted to cause serious bodily injury" to the victims. Appellant's Brief at 16–18. In support of this assertion, Appellant argues:

It can be inferred that since Mr. Alexander failed to testify at the preliminary hearing about the most significant harm that occurred to him during the assault [*i.e.*, cracked and chipped teeth] when the testimony at the time of the preliminary hearing was much closer in proximity to when the alleged harm occurred that the injury was not in fact sustained as a result of Appellant's actions.

\* \* \*

After Appellant did leave Mr. Alexander and go over [to] the area where Mr. Pepperman was being assaulted, Mr. Alexander caused the trio of men to flee as a result of pretending to pull a gun from his waistband. Accordingly, it is argued that it was in … fact the other two actors that caused the injuries to Mr. Pepperman and not Appellant.

*Id.* at 17–18.

Again, Appellant's claims are directed entirely to the credibility of the victim's testimony regarding Appellant's identity, and, as such, challenge the weight, not the sufficiency, of the evidence. *Palo*, 24 A.3d at 1055. Because Appellant failed to raise before the trial court a challenge to the weight of the evidence in either an oral or written motion for a new trial pursuant to Pa.R.Crim.P. 607, he has waived this claim. *Lopez*, 57 A.3d at 80–81.[4]

Lastly, Appellant argues:

on issues of credibility." *Lopez*, 57 A.3d at 80–81 (internal citations omitted). Herein, the jury obviously credited the victims' testimony despite cross-examination designed to undermine their versions of the assault. Because we may not disturb the jury's credibility determinations in this regard, this claim, if preserved, would have failed. *Id.*

---

2. Pa.R.Crim.P. 607 provides, in pertinent part:
   (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
   (1) orally, on the record, at any time before sentencing;
   (2) by written motion at any time before sentencing: or
   (3) in a post-sentence motion.
   Pa.R.Crim.P. 607(A).

3. Even if Appellant had preserved his weight claim, he would gain no relief. "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses…. An appellate court cannot substitute its judgment for that of the jury

4. Even if preserved, this weight claim would afford Appellant no relief either. As stated above, the jury credited the victims' testimony despite cross-examination designed to undermine their identifications of Appellant as the assailant. Because we may not disturb the jury's credibility determinations in this regard, this claim, if preserved, would have failed. *Lopez*, 57 A.3d at 80–81.

With respect to both victims, the record is devoid of any indication that the brothers were in fear for their personal welfare or life and absolutely no medical documentation was introduced at the time of trial to establish the Commonwealth's burden that the injuries rose to the level of serious bodily injuries.

Appellant's Brief at 18. The record indicates otherwise.

■ "A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). Serious bodily injury is "[b]odily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S. § 2301. Contrary to Appellant's position, aggravated assault does not include an element that the victim was in fear for his personal welfare or life.

■ Here, the trial court found, and the record confirms that "Mr. Alexander's teeth were chipped and cracked: he ended up losing four teeth as a result of this incident." Trial Court Opinion, 9/30/16, at 5 (citing N.T., 11/17/15, at 31). Thus, the trial court concluded that Appellant committed an aggravated assault against Mr. Alexander. *Id.* at 6. We agree. The evidence was sufficient to prove that Appellant intentionally caused the "protracted loss or impairment of the function" of Mr. Alexander's teeth by repeatedly striking and kicking him in the head. 18 Pa.C.S. §§ 2701(a)(1), 2301: N.T., 11/17/15, at 31. The trial court also found, and the record confirms, that as a result of this incident, "Mr. Pepperman lost consciousness," his "right eye was swollen and bulging, and his lips were swollen to two to three times

their original size." Trial Court Opinion, 9/30/16, at 6, 7 (citing N.T., 11/17/15, at 29–31, 47–49, 67). Thus, the trial court concluded that Appellant committed an aggravated assault against Mr. Pepperman. *Id.* at 7. We also agree with this conclusion. The evidence was sufficient to prove that Appellant attempted to cause Mr. Pepperman serious bodily injury by repeatedly kicking and punching him in the head until he lost consciousness. 18 Pa.C.S. §§ 2701(a)(1), 2301: N.T., 11/17/15, at 29–31, 47–49, 67. Thus, Appellant's claims regarding the sufficiency of the evidence of serious bodily injury lack merit.

Appellant's second and third issues concern a plea agreement between the Commonwealth and Appellant's cooperating co-defendant, Jeffrey Randolph ("Randolph"). Appellant asserts that the prosecutor committed misconduct by misrepresenting plea negotiations with Randolph. Appellant's Brief at 18. Additionally, Appellant claims that Randolph committed perjury "when he testified that the plea negotiations with [the prosecutor] were not accurately represented in the letter that was introduced during cross[-] examination by Appellant's attorney." *Id.* at 20–21: N.T., 11/17/15, at 115–116.

The trial court disposed of these challenges as follows:

These issues might be waived or procedurally defaulted. Generally, issues not raised in the trial court are waived and cannot be asserted for the first time on appeal. Pa.R.App.P. 302(a).

The court notes that the guilty plea and sentencing hearing for the co-defendant (Jeffrey Randolph) occurred approximately 3 weeks after Appellant's trial. The court recognizes that current counsel was not Appellant's trial counsel and, as a result, probably was not aware of this issue during the time period for filing post sentence motions. Once coun-

sel discovered the issue, however, he neither attempted to file a request with the court to file post sentence motions *nunc pro tunc* nor filed or attempted to file a post sentence motion for a new trial on the ground of after-discovered evidence, which is not subject to the ten-day time limit for the filing of post sentence motions. Pa.R.Crim.P. 720(A)(1): Pa.R.Crim.P. 720(C): ***Commonwealth v. Trinidad***, 9[6] A.3d 1031 (Pa. Super. 2014). If counsel discovered this evidence after the notice of appeal was filed and more than 30 days after Appellant was sentenced, his remedy was, and is, a petition to the Pennsylvania Superior Court for a remand to pursue his claims in the trial court. ***Trinidad***, 9[6] A.3d at 1035 n.4 (citing ***Commonwealth v. Perrin***, 59 A.3d 663, 665–667 (Pa. Super. 2013) and Pa.R.Crim.P. 720, cmt.[5])).

Trial Court Opinion, 9/30/16, at 12–13.

■ Upon review, we agree with the trial court that Appellant's second and third issues are waived because he failed to present them to the trial court by filing a post-sentence motion, a post-sentence motion *nunc pro tunc*, or by seeking a remand from this Court to pursue his claims in the trial court.[6] Pa.R.A.P. 302(a): Pa.R.Crim.P. 720 cmt: ***Trinidad***, 96 A.3d at 1035 n.4.

Appellant's issues are waived or without merit. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

5.  The comment to Pa.R.Crim.P. 720 reads: "[A]fter-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage: after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge: and after-discovered evidence discovered after completion of the direct appeal process should be raised in the context of the PCRA."

6.  Even if preserved, we would reject Appellant's claim for the reasons set forth by the trial court. *See* Trial Court Opinion, 9/30/16, at 13 ("Merely because a plea agreement ultimately was reached that was similar to the one Mr. Randolph wrote about in his letter does not necessarily mean that the agreement was reached prior to trial, the witness committed perjury or the prosecutor committed prosecutorial misconduct. Furthermore, the information regarding Mr. Randolph's plea agreement would only be used to impeach Mr. Randolph's testimony and it is unlikely that this evidence would result in a different verdict if a new trial were granted.").