J-S48020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LEWIS E. BENTLEY | : | |
| | : | |
| Appellant | : | No. 3970 EDA 2017 |

Appeal from the PCRA Order November 30, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0408841-2006, CP-51-CR-0807031-2006

BEFORE:   DUBOW, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 28, 2018**

Lewis E. Bentley (Appellant) appeals *pro se* from the order dismissing his second Post Conviction Relief Act (PCRA) petition as untimely.[1]  We affirm.

Appellant, who relies on a wheelchair, was charged with the July 10, 2005 non-fatal shooting of Anthony Fitzsimmons, and the July 21, 2005 fatal shooting of Vernon Purnell.  A jury trial was held in December of 2007.[2] Because Appellant invokes the newly-discovered evidence exception to the PCRA's time bar, we recount the facts adduced at trial below.

Fitzsimmons testified that on the morning he was shot, he encountered

---

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.  The Commonwealth has not filed a brief.

[2] The trial judge also presided over both of Appellant's PCRA proceedings.

Appellant near Upland and Greenway Streets in Philadelphia, used Appellant's cell phone for five minutes, and returned it to him. Fitzsimmons further testified that later that day, he was at a friend's house. This Court, in our disposition of Appellant's direct appeal, explained:

> [A] male banged on the door and told Fitzsimmons that [A]ppellant wanted to see him on Upland Street. . . . When [Fitzsimmons arrived, A]ppellant was not there. Appellant's brother told Fitzsimmons to wait for [A]ppellant to return because they had something to discuss. [T]hree other males were present at the time. Fitzsimmons knew [them] through his participation in drug sales in the neighborhood. [Fitzsimmons and A]ppellant's brother began arguing about [whether] Fitzsimmons stole [Appellant's] cell phone[. Fitzsimmons was] worried about being attacked by the other males [and thus] walk[ed] out into the street where it was more open . . . . He walked up towards Greenway Avenue and the males followed, threatening [and arguing with] him. . . . By the time he reached the corner of 66th and Greenway, the argument between Fitzsimmons and [A]ppellant's brother had intensified. The three males were standing on the corner and [A]ppellant was a short distance away from them in his wheelchair, against the wall, next to a payphone. Fitzsimmons heard [A]ppellant say "fuck that," then heard a pop and saw flashes coming from where [A]ppellant was sitting in his wheelchair. The males then fled. Fitzsimmons tried to take cover[, but was shot and] called for an ambulance[.] Fitzsimmons suffered three gunshot wounds. . . .
>
> . . . Fitzsimmons did not immediately tell police that he knew who had shot him. However, he later identified a photograph of [A]ppellant as his assailant. . . .

*Commonwealth v. Bentley*, 2127 EDA 2008 (unpublished memorandum at 2-3) (Pa. Super. Oct. 2, 2009). Police recovered three .32 fired cartridge casings (FCCs) from the crime scene. At trial, Fitzsimmons identified Appellant as the shooter.

With respect to the other victim, Purnell's girlfriend, April Floyd, testified

that she previously dated Appellant. "On one occasion, [A]ppellant attempted to break into her house at 5416 Thomas Avenue [in Philadelphia] while she and Purnell were sleeping inside. Floyd called police." *Id.* at 8. In the early morning hours of July 21, 2005, Purnell was fatally shot outside of Floyd's house. He was found "hanging out of the passenger side door" of a car, and the driver side window was "shot out." *Id.* at 4. There were no eyewitnesses to the shooting. The police recovered, *inter alia*, two .32 caliber FCCs and ten .40 caliber FCCs from this crime scene.

Additionally, Appellant's fiancée, Aisha Patton, testified that on March 4, 2005 (four months before the above shootings), she and Appellant were arguing and tussled over a gun. The gun discharged and shot Patton in the leg. *See Bentley*, 2127 EDA 2008 at 1-2, 6-7. A .40 caliber projectile was recovered, and forensic testing showed that this projectile and the .40 caliber FCCs from Purnell's shooting were fired from the same gun. Appellant did not testify or call any witnesses at trial. Trial Court Opinion, 12/31/08, at 11.

The jury found Appellant guilty of first-degree murder (the shooting of Purnell), aggravated assault (the shooting of Fitzsimmons), and two counts of carrying a firearm without a license. On February 15, 2007, the court sentenced Appellant to an aggregate term of life imprisonment and a consecutive 5 to 10 years' imprisonment.

Appellant appealed, challenging the sufficiency and weight of the evidence. On October 2, 2009, this Court affirmed the judgment of sentence.

Pertinently, we rejected Appellant's claims that there was insufficient evidence to establish the identity of the person who shot Fitzsimmons, that Fitzsimmons "speculated that Appellant was the shooter because he saw flashes coming from Appellant's wheelchair," and "the fact that four other men were [present during the shooting] was overlooked." **Bentley**, 2127 EDA 2008 at 10. We reasoned:

> Fitzsimmons testified that while he was engaged in an altercation with Appellant and three other individuals, he heard Appellant say, "[F]uck that[,]" Appellant was sitting in a wheelchair in front of him on the right and the other men were standing a few feet away[, and] Fitzsimmons then heard several shots . . . and saw flashes coming from the direction of Appellant's wheelchair.

**Id.** at 12. Appellant filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on March 16, 2010. **Commonwealth v. Bentley**, 653 EAL 2009 (Pa. Mar. 16, 2010).

On March 2, 2011, Appellant filed a counseled, timely PCRA petition, in which he raised several claims of ineffective assistance of counsel. The PCRA court denied relief, and on March 14, 2014, this Court affirmed on appeal. **Commonwealth v. Bentley**, 831 EDA 2013 (unpublished memorandum) (Pa. Super. Mar. 14, 2014). Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On August 16, 2017, Appellant filed the *pro se* PCRA petition at issue in this appeal, invoking the "newly-discovered facts" exception to the one-year

filing deadline of the PCRA[3] on the basis of a letter he received on June 30, 2017. Appellant attached a copy of the letter, which was signed "Maureese aka Red." As the PCRA court pointed out, it appeared that Maureese and Appellant knew each other. *See* PCRA Court Opinion, 2/5/18, at 4. Maureese's letter stated that in July of 2005, he was the person firing a .32 caliber gun at the corner of 66th Street and Greenway Avenue, and that his target was Appellant. Appellant's "Motion for Newly Discovered Evidence PCRA," 8/16/17, Exhibit at 1. Maureese further stated that a couple days later, a "Mal Parker" offered him money "to send [Appellant] a message," because Mal Parker owed Appellant money for a .40 caliber gun that Mal Parker had already taken possession of. *Id.* at 2. Mal Parker also told Maureese that Appellant "had a house on 54th Thomas Ave [sic]." *Id.* at 2. "On the day before the shooting," Mal Parker gave Maureese "half the money up front" and the .40 caliber gun, telling him to use it against Appellant. *Id.* at 3. On the morning of the shooting, Maureese parked his car "on the corner on 54th Street," "walk[ed] up the block to the tinted Honda [sic]," and fired two guns — a .32 caliber gun and the .40 caliber gun that Mal Parker gave him — at the car window and door. *Id.* Maureese then ran to his car and drove away. The letter made no mention of anyone else present in this second incident. Finally, Maureese stated that he was not willing to go to the police

---

[3] *See* 42 Pa.C.S.A. § 9543(b)(1)(ii).

or the District Attorney's office, but that he was writing to Appellant because his conscience was wearing on him.

On October 24, 2017, the PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss the PCRA petition without a hearing, finding that the petition was untimely filed. Appellant filed a timely *pro se* response, but the court dismissed his petition on November 30, 2017. The court subsequently explained that it rejected Appellant's claim that at the time of trial, he was unaware of Maureese's involvement in the crimes. The court reasoned that "Appellant, who is apparently familiar with Maureese[,] does not explain why he could not have learned earlier of Maureese's involvement." PCRA Court Opinion, 2/5/18, at 4. The court also recounted that Fitzsimmons testified that he was "moving away from [A]ppellant at the time he was shot" and that "he saw flashes and heard the shots coming from . . . the wall where [A]ppellant sat in his wheelchair." *Id.* Finally, the court stated that even if Appellant met the timeliness requirement of the PCRA, he would not be entitled to relief because: (1) Maureese stated that he was not willing to disclose his alleged confession to the police or District Attorney's office; (2) "Maureese's alleged confession, if believed, would be used solely to impeach the credibility of the eyewitness testimony and the testimony of the ballistics expert;" and (3) the letter would not likely compel a different verdict if a new trial were granted. *Id.* at 5.

Appellant timely appealed. The PCRA court did not order him to comply

with Pa.R.A.P. 1925(b), but issued an opinion on February 5, 2018. Appellant presents one issue:

> Was the PCRA Court in violation of Appellant's rights under Article 1 Section 9 to The Constitution of the Commonwealth of Pennsylvania and The Fourteenth Amendment to Equal Protection of the law by finding that Appellant's Petition for Newly Discovered Evidence was untimely and was in violation for not scheduling a proper hearing?

Appellant's Brief at 6.

Appellant avers that the PCRA court violated his rights in finding that his petition was untimely. He claims that he properly invoked the newly-discovered facts exception, where the written confession from "Maureese aka Red[ ]" supported his claim of actual innocence, Appellant "could not have known or discovered this information without Maureese's confession because [Appellant] was not present at" either shooting, and he filed the petition within 60 days of receiving Maureese's letter. **Id.** at 13. Appellant further asserts that the PCRA court erred in relying on "certain sections of . . . inconsistent [trial] testimony . . . to justify her decision." **Id.** at 14. In support, Appellant extensively reviews Fitzsimmon's trial testimony, arguing that it was inconsistent and emphasizing that Fitzsimmons stated that he did not see a gun in Appellant's hand during the shooting. **See id.** at 14-22.

This Court has stated:

> "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level."

*Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citations omitted).

"Before we may address the merits of Appellant's arguments, we must first consider the timeliness of Appellant's PCRA petition because it implicates the jurisdiction of this Court and the PCRA court." ***Id.*** A PCRA petition "shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves" one of the three limited exceptions set forth at 42 Pa.C.S.A. § 9545(b)(1). 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). With respect to the "newly discovered evidence" at Subsection 9545(b)(1)(ii):

> [T]he petitioner must establish only that (1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence. We have unequivocally explained that "the exception . . . does not require any merits analysis of the underlying claim." Rather, the exception only requires a petitioner to "prove that the facts were unknown to him and that he exercised due diligence in discovering those facts."
>
> Once jurisdiction has been properly invoked . . . the relevant inquiry becomes whether the claim is cognizable under the PCRA. Section 9543, titled "Eligibility for relief," governs this inquiry. [Pertinently], section 9543 delineates seven classes of allegations that are eligible for relief under the PCRA. ***See*** 42 Pa.C.S.A. § 9543(a)(2). Of relevance here is the "after-discovered evidence" provision, which states that a claim alleging "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced" is cognizable under the PCRA.[4] 42

---

[4] Our Supreme Court has noted that a comparison of Subsections 9543(a)(2)(vi) (after-discovered evidence requirement) and 9545(b)(1)(ii) (newly-discovered evidence exception) "reveals a superficial resemblance, as

Pa.C.S.A. § 9543(a)(2)(vi). To establish such a claim, a petitioner must prove that "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict."

***Commonwealth v. Cox***, 146 A.3d 221, 227-228 (Pa. 2016).

Here, Appellant does not claim that his PCRA petition was filed within the one-year filing requirement; instead, he maintains that he is entitled to relief under the newly-discovered evidence exception. **See** 42 Pa.C.S.A. § 9545(b)(1)(ii). To properly plead this exception, Appellant was required to show that newly-discovered "facts were unknown to him and that he exercised due diligence in discovering those facts." **See Cox**, 146 A.3d at 227. We hold that Appellant properly invoked the exception by averring that on June 30, 2017, he received the letter, which sets forth facts previously unknown to him. **See id.** However, no relief is due on the merits of Appellant's claim.

We agree with the PCRA court that Appellant has not established that he is entitled to relief. **See** PCRA Court Opinion, 2/5/18, at 4-5. As both the PCRA court and this Court previously stated, Fitzsimmons testified to the circumstances surrounding his encounter with Appellant on July 10, 2005 —

---

both involve consideration of whether the facts or evidence upon which the claim is based were previously unknown to the petitioner and whether that information could have been discovered earlier, through the exercise of due diligence." **Commonwealth v. Cox**, 146 A.3d 221, 228 (Pa. 2016). Nevertheless, the Court has "cautioned against the conclusion that there is an overlap between these provisions and reiterated that they remain distinct inquiries." **Id.**

that he heard Appellant say "fuck that" and then heard a pop and saw flashes coming from Appellant's direction. *See Bentley*, 2127 EDA 2008 at 3, 12; PCRA Court Opinion, 2/5/18, at 4. Appellant's present attempt to challenge the weight of Fitzsimmons' trial testimony is meritless, because any question as to credibility of the witnesses was resolved by the jury at trial. Appellant's newly-discovered evidence (Maureese's letter) cannot be used to impeach Fitzsimmon's testimony or the ballistics evidence, and our "scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at . . . trial." *See Cox*, 146 A.3d at 227; *Miller*, 102 A.3d at 992; *Commonwealth v. Kinney*, 157 A.3d 968, 972 n.3 (Pa. Super. 2017) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses."). Accordingly, we agree with the PCRA court that Appellant has not established a basis for relief, and affirm the order denying dismissing Appellant's second PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/18

- 10 -