J-S23010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| v. | : | |
| DAYQUINE COOPER | : | |
| Appellant | : | No. 1333 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 14, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008449-2016

BEFORE: NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                           **FILED MAY 26, 2020**

Appellant Dayquine Cooper appeals from the judgment of sentence following a jury trial and convictions for attempted murder, two counts of aggravated assault, carrying a firearm without a license, carrying a firearm on a public street or property in Philadelphia, possession of an instrument of crime, and carrying a firearm by a prohibited person.[1]  Appellant challenges the weight and sufficiency of evidence, as well as the discretionary aspects of his sentence.  We affirm.

We state the facts as set forth by the trial court:

_____

[1] 18 Pa.C.S. §§ 901, 2502, 2702(a)(1), 2702(a)(4), 6108, 6106, 907, 6105. Appellant "was acquitted of conspiracy to commit murder and aggravated assault" of Anna Cook (Complainant) and her husband.  Trial Ct. Op., 7/29/19, at 1 n.1; N.T. Trial, 10/18/18, at 10.

At trial, the Commonwealth presented the testimony of Philadelphia police officers Joseph Rauchut, Raymond Andrejczak, and Steven Berardi, Philadelphia police detectives Edward Tolliver, James Dunlap, and William Kelhower, Philadelphia associate medical examiner Dr. Daniel Brown, and Joseph Bey and [Complainant]. [Appellant] testified on his own behalf and presented the testimony of Deangelo Cooper and Vanneliz Ramos. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On the afternoon of July 15, 2016, Joseph Bey got into a physical altercation with a man in a rival rap group[2] named Paul Sanders. Afterwards, Sanders and two men named Noon and Chris, went to a house on the 2700 block of North Darien Street where [Appellant] was present in order to inform [him] about the altercation with Bey. Sanders, along with [Appellant], Noon, and Chris, among others, were members of a rap group called 2700. Bey, along with Markeith McPherson, and Flacco, among others, were members of a rival rap group called Chop or Drop ("COD"). The groups were in a dispute because Flacco had left 2700 and joined COD, which upset members of 2700 and led to the fight between Sanders and Bey.

Later that day, at approximately 5:50 p.m., Bey and McPherson were on the 2800 block of North 9th Street near the intersection of North 9th and Somerset streets talking to their friends who were in a car. As the men conversed, Sanders, Noon, and Chris appeared and began walking toward Bey and McPherson. Bey saw Noon reach into his backpack, and, fearing that Noon was about to pull out a gun, both Bey and McPherson immediately started running away from the three men.

As Bey was running away, an unknown member of 2700, who was further up the block from where Sanders, Noon and Chris were standing, fired gunshots towards Bey, but missed hitting him.

_____

[2] The Commonwealth characterizes the "rap groups" as "street gangs." Commonwealth's Brief at 12.

Later that evening, at around 8:40 p.m., [Appellant] and another man approached the 2800 block of North 9th Street near the intersection of North 9th and Somerset streets, the same place where the shooting described above took place, looking for members of COD. At the same time, [Complainant] and her husband, Jerry Floyd, were outside the corner store on 2809 North 9th Street where they were going to buy ice and Kool-Aid for their grandchildren. [Complainant], who had cancer and had undergone chemotherapy treatment earlier that day, was tired and sat down on the store's steps to rest. Now standing across from the corner store, [Appellant] and the other man began firing gunshots up 9th Street. One of the bullets struck a teenage girl, Amyde Jones in the hip. After firing the initial gunshots, the two men approached Floyd and [Complainant]. Floyd was then shot in the abdomen. [Complainant], who was still sitting on the steps of the store, looked up, saw [Appellant], and begged him not to shoot her. [Appellant] smiled at [Complainant] and then shot her in the upper body near her right armpit. The bullet went through [Complainant's] diaphragm and liver and stopped in her intestines.

Jones, Floyd, and [Complainant] were rushed to Temple University Hospital. While both Jones and [Complainant] survived the shooting, Floyd did not. [Complainant] underwent two extensive surgeries. The day after the shooting, while she was still in the hospital, [Complainant] identified [Appellant] as the man who shot her from a double blind photo array.

Additionally, on September 12, 2016, Bey gave a statement to detectives about the shootings, which was later obtained by [Appellant] as part of the discovery in the case. While [Appellant] was in jail awaiting trial, he managed to transmit the statement to members of 2700. Those members then posted the image of Bey's statement on Instagram with the caption "N----- want war but they rattin."

Trial Ct. Op., 7/29/19, at 2-5 (footnotes and citations omitted). "This was [Appellant's] second trial on these charges. At the first trial, [Appellant] was acquitted of the murder of . . . Floyd. The jury was hung on the remaining charges." *Id.* at 1 n.1.

- 3 -

We add that at Appellant's second trial, Complainant identified Appellant in-court as the person that shot her. N.T. Trial, 10/11/18, at 130. Complainant testified that she did not know and did not ever speak with Appellant. *Id.* at 167.

> [Assistant District Attorney:] Did there ever come a time when you realized that you had seen [Appellant] before?
>
> [Complainant:] I believe when I was in the hospital when I was trying to sort everything all out, I said I've seen this young man in passing before. And right there on 8th Street, 8th and Lehigh, there's a series of stores, Family Dollar, Kicks, a grocery store over there. So when I go grocery shopping, I would pass Darien Street. I can remember one time I was getting a cheesesteak and it's right there on the corner at Darien and Lehigh. I walked through there, I seen this young man, I paid no attention. A lot of young boys out there, a lot of young people.
>
> [Assistant District Attorney:] Is that the 2700 block of Lehigh – of Darien?
>
> [Complainant:] Yes. And I have seen him over there on 9th Street. I believe they were having, like, a block party or a birthday party. I'm not quite sure which one it was, but it was a lot of people out. But I do remember I had seen him on the corner with, I guess, Rich and the rest of the crew, because it's a lot of young people and they all hang together. So, you know . . .
>
> [Assistant District Attorney:] The times that you had seen him before or that you realized you had seen him before, had those happened -- what period of time had that happened, had that been within the previous year or the previous few years or . . .
>
> [Complainant:] Probably the previous year. It wasn't, like, back to back.

***Id.*** at 168-69 (ellipses in original). Complainant further testified that after she returned home, she was "watching the news," when she saw that Appellant was arrested and saw his picture. ***Id.*** at 169-70.

During cross-examination, Complainant testified that she did not know the men that approached her. ***Id.*** at 183. She reiterated, however, that it was Appellant who shot her and that she identified Appellant from a photo array. ***Id.*** at 186, 194. Complainant also testified as follows during cross-examination:

> [Appellant's Counsel:] All right. So it came into your mind as you were going through this and questioning what happened; right? You said, wait a minute, I know this guy, I recognize him from before. Am I clear on that, am I wrong on that?
>
> [Complainant:] Yes. When I seen [Appellant's] picture,[3] when I had time to sit down, cool off a bit, I'm going through things in my mind, and I'm saying, yes, I know this young man from somewhere, I've seen him before. Yes, I said that.
>
> [Appellant's Counsel:] Okay. As you were looking at the picture?
>
> [Complainant:] Not as I'm looking at the picture, but some point down the line.
>
> [Appellant's Counsel:] Okay.
>
> [Complainant:] A few days later, yes, it did occur to me.

---

[3] The testimony is unclear, but Complainant appears to be referring to the picture from the photo array. As previously quoted above, Complainant identified Appellant from a photo array while recovering from surgery. Trial Ct. Op. at 5.

[Appellant's Counsel:] Okay. Now, I want to ask you about those circumstances now. Okay? . . .

*Id.* at 195. Complainant then testified that she remembered seeing Appellant in the neighborhood a "couple of months" earlier and at block parties. *Id.* at 196-98.

Following Appellant's convictions, the trial court ordered a pre-sentence investigation and mental health evaluation. On December 14, 2018, the trial court sentenced Appellant to an aggregate sentence of thirty-two and one-half to seventy-seven years' incarceration. The total sentence consisted of consecutive sentences of (1) twenty to forty years' incarceration for attempted murder, (2) two to ten years' incarceration for aggravated assault, (3) three and one-half to seven years' incarceration for carrying a firearm without a license, (4) one to five years' incarceration for carrying a firearm on a Philadelphia public street, (5) one to five years' incarceration for possession of an instrument of crime, and (6) five to ten years' incarceration for carrying a firearm by a prohibited person.

Appellant filed a post-sentence motion, which we reproduce in full:

1. The verdict was against the weight and sufficiency of the evidence. [Appellant] was acquitted of murder and four counts of conspiracy. Therefore, the verdict was inconsistent[.]

2. The identification made of [Appellant] was insufficient to support a conviction from the evidence presented[].

3. The sentence was excessive considering [Appellant's] age and mitigating evidence[.]

Post-Sentence Mot., 12/19/18, at 1. The trial court denied Appellant's post-sentence motion on April 4, 2019.[4]

Appellant filed a timely notice of appeal on May 2, 2019. On May 6, 2019, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement on or before May 27, 2019, which was Memorial Day. Appellant filed a Rule 1925(b) statement on Tuesday, May 28, 2019, which raised, among other issues, a claim that the "verdict was against the weight of the evidence."[5] Pa.R.A.P. 1925(b) Statement, 5/28/19. The trial court prepared a Rule 1925(a) decision.

In his appellate brief, Appellant raises the following issues:

1. Whether the verdict against the weight and sufficiency of the evidence when the lone [Complainant] based her recognition of Appellant on her previous memory of seeing him in the neighborhood before the incident and not on any independent recognition?

2. For the same reasons, whether the verdict was against the weight of the evidence.

_____

[4] We acknowledge that Appellant, acting *pro se*, filed two motions with the trial court, including a *pro se* motion for reconsideration of his sentence. Appellant, however, was represented by counsel at that time and therefore, his pleadings were legal nullities. **See Commonwealth v. Jette**, 23 A.3d 1032, 1040 (Pa. 2011).

[5] Although the trial court's order explicitly stated May 27, 2019, Appellant filed a timely Rule 1925(b) statement. **See** 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall . . . on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

3. Whether the decision to order consecutive sentences was too harsh given Appellant's youthful age, lack of parental guidance, and dysfunctional family history.

Appellant's Brief at 5.

Appellant presents one argument in support of his first two issues. *Id.* at 11.[6]  Initially, Appellant reiterates his Rule 1925(b) issue that the evidence was insufficient because Complainant's identification was based only on her prior memory and not on any independent memory of the shooting. *Id.*  Appellant acknowledges, however, that any "indefiniteness or uncertainty in [identification] testimony goes to its weight and not its sufficiency":

> Here, [Complainant's] testimony at trial was that when she was shot, she believed that she had never seen defendant before. However, she testified that sometime after the shooting she realized that she had seen Appellant before in the neighborhood, perhaps at a block party or birthday party.  This testimony clearly establishes Appellant's contention that [Complainant's] identification was not based on an independent memory of the incident.

*Id.* (citations omitted).[7]  Appellant notes that when Complainant identified him, she "was still in the hospital . . . and had undergone multiple surgeries

---

[6] We note that Pa.R.A.P. 2119 states that the "argument shall be divided into as many parts as there are questions to be argued . . . ."  Pa.R.A.P. 2119.

[7] In contrast, Appellant's post-sentence motion raised a weight claim that the verdict was inconsistent given his acquittal for the murder of Floyd and four counts of conspiracy.

the previous day." *Id.* at 12. Appellant observes that Complainant was watching the news when she learned Appellant was arrested and saw Appellant's picture. *Id.* Appellant argues it "is that recognition and familiarity that cause[d] [Complainant] to identify Appellant, and no other recognition besides that." *Id.* Appellant concludes that because "the guilty verdict on attempted murder was based on insufficient evidence," against the weight of the evidence, and inconsistent with the not guilty verdicts,[8] this Court must reverse his convictions. *Id.* at 13.

The Commonwealth argues that because Appellant "challenges the believability and credibility of [Complainant's] identification testimony," it "is a challenge to the **weight**, not the sufficiency of the evidence." Commonwealth's Brief at 9 (emphasis in original). Based on that premise, the Commonwealth asserts that Appellant waived his weight claim because his post-sentence motion asserted only the verdict was inconsistent given his acquittal for murder and four counts of conspiracy. *Id.*; *see also* Post-Sentence Mot. at 1. Therefore, the Commonwealth concludes, the "trial court was . . . never asked to rule on the weight of the evidence claim [Appellant] now presents." *Id.*

---

[8] As noted earlier, the jury acquitted Appellant of conspiracy to commit murder and aggravated assault. Trial Ct. Op. at 1 n.1.

In any event, on the merits of the weight claim, the Commonwealth argues that the verdict was consistent with the weight of the evidence. *Id.* The Commonwealth summarizes the record, *id.* at 12-13, notes that the "jury was free to believe all, part or none of" the record, and states the jury credited the Commonwealth's version of events. *Id.* at 13-14. The Commonwealth similarly restates the record and concludes that the evidence was sufficient to support Appellant's convictions. *Id.* at 15-16.

With respect to Appellant's argument that Complainant did not believe she saw Appellant before the shooting, but subsequently remembered seeing Appellant in the neighborhood, *id.* at 16-17, the Commonwealth argues that Appellant waived the argument by failing "to cite to the notes of testimony or to any legal authority . . . ." *Id.* at 17. The Commonwealth characterizes Appellant's argument as "irrelevant to sufficiency" because Complainant identified Appellant "in a lineup the day after the shooting"[9] and at trial. *Id.*

The trial court opines that Appellant waived his weight claim due to Appellant's failure to identify "any specific reasons as to why" in his Rule 1925(b) statement. Trial Ct. Op. at 5 (citing ***Commonwealth v. Freeman***, 128 A.3d 1231, 1249 (Pa. Super. 2015)). In any event, relying on the

---

[9] The Commonwealth is apparently referencing the photo array that Complainant saw in the hospital.

weight claim framed in Appellant's post-sentence motion, the trial court would not grant relief:

> It is true that [Appellant] was acquitted of the murder of Jerry Floyd at his first trial . . . and was acquitted of all conspiracy charges in the second trial . . . . However, the aggravated assault and attempted murder convictions in the second trial, here at issue, pertained to [Complainant] and Amyde Jone[s]; not to murder victim Floyd. Moreover, the jury was free to conclude that [Appellant] shot [Complainant] and Jones on his own, without conspiring with others to do so. Accordingly, the verdicts were not, in any manner, inconsistent.

Trial Ct. Op. at 6. The trial court noted that "even if the verdicts had been inconsistent, no relief would be due . . . ." *Id.*

Turning to Appellant's challenge to the sufficiency of evidence, the trial court construes his claim as "appears to be premised" on Complainant's testimony that she had never seen Appellant before, but "after the shooting she realized that she had seen [Appellant] before in the neighborhood . . . ." *Id.* at 7. The trial court reasons that the record established that Complainant's identification was based on her independent memory of the shooting. *Id.* The trial court notes that Complainant identified Appellant from a double blind photo array and in-court, and she testified she was watching the news when she identified Appellant from his photo on television. *Id.* at 7-8.

The standard of review for a "claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "An allegation that the verdict is against the weight of the

- 11 -

evidence is addressed to the discretion of the trial court." *Id.* at 751-52 (citation omitted). We discuss the standard for Appellant's sentencing claim below.

> Our Supreme Court has explained
>
> Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Id.* at 751 (citations omitted).

In contrast, a "challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." *Commonwealth v. Kinney*, 157 A.3d 968, 971 (Pa. Super. 2017) (citation omitted and some formatting altered).

"A victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime." *Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (citation omitted).

> Evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support

a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Kinney*, 157 A.3d at 971 (citation omitted).

Furthermore, a defendant must preserve a weight claim either "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607. A defendant must also specify in the "Rule 1925(b) statement which verdict or verdicts were contrary to the weight of the evidence," and "offer specific reasons as to why those verdicts were contrary to the weight of the evidence." *Freeman*, 128 A.3d at 1248-49. In *Freeman*, the defendant "asserted only that 'the verdict of the jury was against the weight of the evidence.'" *Id.* at 1249 (quoting the defendant's Rule 1925(b) statement). The *Freeman* Court therefore held that the defendant waived his challenge to the weight of the evidence. *Id.*

Turning to this case, Appellant has challenged Complainant's identification of him as suspect because of testimony he characterizes as conflicting: her initial testimony that she had never seen Appellant before in contrast to her later testimony that she recalled seeing Appellant in the neighborhood. Appellant's Brief at 11. Appellant reasons this conflict establishes that Complainant's "identification was not based on an

independent memory of the incident." *Id.* We agree with the Commonwealth that Appellant is challenging the credibility of Complainant's identification, which is a challenge to the weight of the evidence. *See Kinney*, 157 A.3d at 971.

Having concluded Appellant is challenging the weight of the evidence, we next address the trial court's holding of waiver due to Appellant's vague Rule 1925(b) statement. *See* Trial Ct. Op. at 5. Appellant's Rule 1925(b) claim, *i.e.*, "[t]he verdict was against the weight of the evidence," is identical to the defendant's Rule 1925(b) claim in *Freeman*. *See* Trial Ct. Op. at 5; *Freeman*, 128 A.3d at 1248-49. Therefore, we agree with the trial court that Appellant waived his weight claim. *See Freeman*, 128 A.3d at 1248-49.

Even if we were to construe Appellant's claim as a challenge to the sufficiency of evidence as to his identity, Complainant identified Appellant in-court.[10] N.T., 10/11/18, at 130. Therefore, Complainant's testimony alone was sufficient to establish Appellant's identity. *See Johnson*, 180 A.3d at 478. It was for the jury to evaluate any "indefiniteness and uncertainty" in Complainant's testimony, *i.e.*, any purported discrepancy between her

_____

[10] We cannot address Appellant's weight claim on the merits because the trial court interpreted Appellant's weight claim only in the context of inconsistent verdicts. Therefore, the trial court never resolved a weight claim regarding Complainant's identification of Appellant.

testimony that she had never seen Appellant before and her testimony that she later recalled seeing Appellant in the neighborhood, which goes to the weight of her testimony. ***See Kinney***, 157 A.3d at 971. For these reasons, Appellant is not entitled to relief for his first two issues.

We turn to Appellant's last issue and quote his argument in its entirety below:

> The presentence report indicated that Appellant was without a father and had a dysfunctional family upbringing. He was also 22 years old at the time of the incident. A sentence of 20-40 years was sufficient and not 37.5 to 77 years. A sentence of this nature is not reasonable and balanced under all circumstances.

Appellant's Brief at 12. The Commonwealth asserts, among other arguments, that Appellant waived his claim by failing to include a Pa.R.A.P. 2119(f) statement. Commonwealth's Brief at 20-21. The trial court addressed the merits and held Appellant's sentence was appropriate. Trial Ct. Op. at 8-10.

In order to preserve a discretionary sentencing issue, a defendant must raise the issue in (1) a post-sentence motion or during the sentencing proceedings; (2) a Rule 1925(b) statement; and (3) a Rule 2119(f) statement. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*). If an appellant "has failed to include a Rule 2119(f) statement . . . and the Commonwealth objects, then the issue is waived and this Court may not review the claim." ***Commonwealth v. Lively***, ___ A.3d ___, ___, 2020 WL 1915240, *7 (Pa. Super. 2020) (citation omitted).

Instantly, the Commonwealth has objected to Appellant's failure to include a Rule 2119(f) statement. Commonwealth's Brief at 20. Because Appellant failed to preserve this appellate issue in compliance with Rule 2119(f), and the Commonwealth objected, Appellant has waived the issue. *See Lively*, ___ A.3d at ___, 2020 WL 1915240 at *7. For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2020