J-A25005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: K.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: K.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 202 EDA 2018 |

Appeal from the Dispositional Order December 27, 2017
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0002352-2017

BEFORE:  PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 3, 2018**

Appellant, K.B., appeals from the December 27, 2017 Dispositional Order entered in the Philadelphia Court of Common Pleas, which ordered Appellant to be committed and placed forthwith at The Glen Mills School residential facility ("Glen Mills") after the juvenile court adjudicated him delinquent for Robbery, Conspiracy, and Possessing an Instrument of Crime. After careful review, we find that the juvenile court did not abuse its discretion regarding all issues except the weight of the evidence issue, for which we remand with instructions.

The relevant factual and procedural history, as gleaned from the juvenile court's Pa.R.A.P. 1925(a) Opinion, are as follows.  On June 30, 2017, at approximately 10:30 PM, then-17-year-old J.V. ("Victim") went for a jog in his neighborhood.  During his jog, he saw three young men walking around together, including then-15-year-old Appellant, M.L., and Z, a person he

recognized from the neighborhood. The Victim was able to observe their faces. Approximately ten minutes later, he saw the three males crouched behind a car, periodically standing up and then crouching back down again. As the Victim jogged past, the three young men stepped out from behind the car and stopped the Victim. Appellant and M.L. were both wearing ski masks. Appellant held a gun to the Victim's head and ordered the Victim to hand over everything he had. The Victim handed over his cellphone. Appellant, M.L., and Z fled the scene.

The Victim immediately went home and called the police to report the robbery. Police Officer James Alderfer responded to the call and the Victim gave Officer Alderfer a detailed description of the three young males. The Victim described all of the offenders as male, fifteen to seventeen years of age, medium height, and skinny. The Victim stated that the gunman was wearing a black sweatshirt with a logo on the front, black pants, and a grey mask.

Police Officer Colin Goshert observed three males that matched the description standing on the side of the street within a few blocks of the scene of the reported robbery. Officer Goshert approached the males; one began to run and the other two began to walk in a different direction. Officer Goshert stopped the two males who were walking and detained them; the males were later identified as Appellant and M.L. Officer Goshert also recovered a black hooded sweatshirt with a logo on the front and a dark grey knitted ski mask from the ground nearby.

Officer Alderfer transported the Victim to the area where police detained Appellant and M.L. The Victim identified Appellant and M.L. as two of the three males who just robbed him at gunpoint. The Victim specifically identified Appellant as the gunman. At that time, the Victim identified the sweatshirt and mask recovered by police as the clothing that Appellant wore during the robbery.

On July 1, 2017, the police arrested Appellant. The Commonwealth charged him as an adult with Robbery, Conspiracy, Violations of the Uniform Firearms Act, Possessing an Instrument of Crime, and related charges.

On November 1, 2017, the lower court transferred Appellant's case to the Juvenile Delinquent Division of Family Court by agreement of the parties pursuant to 42 Pa.C.S. § 6322.[1]

On December 7, 2017, the juvenile court held an adjudicatory hearing where the Victim testified and positively identified Appellant as the gunman during the robbery. The juvenile court found Appellant guilty of Robbery, Conspiracy, and Possessing an Instrument of Crime. On the same date, the juvenile court adjudicated Appellant delinquent and deferred disposition. On December 27, 2017, the juvenile court committed Appellant to Glen Mills.

Appellant timely appealed. Both Appellant and the juvenile court complied with Pa.R.A.P 1925.

_____

[1] If the defendant is a child in a criminal proceeding, Section 6322 permits a court to transfer the case to a juvenile division or juvenile court if certain requirements are met. *See* 42 Pa.C.S. § 6322(a).

- 3 -

Appellant raises the following issues on appeal:

1. Was not the evidence of [A]ppellant's identification insufficient to sustain a verdict of guilt for any of the charges in violation of [A]ppellant's state and federal constitutional rights, where the identification was based on a general description of height and clothing, [A]ppellant did not match the description, all three perpetrators were wearing masks covering all but their eyes, and [A]ppellant presented evidence of good character?

2. Was not the verdict against the weight of the evidence where the identification testimony was so inherently contradictory and unreliable inasmuch as all three alleged perpetrators were wearing masks covering all but their eyes, the complainant provided contradictory testimony regarding who was wearing what shirt and mask, and he had limited opportunity to observe the perpetrators, such that the juvenile court's adjudication of guilt was manifestly unreasonable and a new trial should be granted in the interest of justice?

3. Did not the juvenile court err and abuse its discretion in adjudicating [A]ppellant delinquent where the court failed to hear evidence as to whether [A]ppellant was in need of treatment, rehabilitation, or supervision, and as such, the finding of delinquency was based on insufficient evidence and not proven beyond a reasonable doubt?

4. Did not the juvenile court err and abuse its discretion by committing [A]ppellant to an out-of-home placement facility inasmuch as it failed to set forth adequate reasons as to why commitment was the least restrictive alternative available as required by the Juvenile Act?

Appellant's Brief at 4-5.

Our standard of review of dispositional orders in juvenile proceedings is well settled. The Juvenile Act grants broad discretion to juvenile courts when determining an appropriate disposition. *In re C.A.G.*, 89 A.3d 704, 709 (Pa. Super. 2014). We will not disturb the juvenile court's disposition absent a

manifest abuse of discretion. ***In Interest of J.G.***, 145 A.3d 1179, 1184 (Pa. Super. 2016).

Appellant first challenges the sufficiency of the identification evidence, averring that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that Appellant was the person who committed the crimes. Appellant's Brief at 18.

When we review a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we must determine "whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged." ***In re V.C.***, 66 A.3d 341, 349 (Pa. Super. 2013) (citation omitted). The Commonwealth must establish each element of the crimes charged by proof beyond a reasonable doubt and may sustain its burden by wholly circumstantial evidence. ***Id.*** "In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." ***Commonwealth v. Brooks***, 7 A.3d 852, 857 (Pa. Super. 2010). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***In re K.A.T., Jr.***, 69 A.3d 691, 696 (Pa. Super. 2013) (citation omitted). Moreover, "[t]he fact-finder is free to believe all, part, or none of the evidence presented at trial." ***Id.*** (citation omitted).

Notably, this Court has consistently held that a victim's in-court testimony, which identifies a defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime. *Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018). Claims that identification evidence are "unconvincing" or "vague" are directed entirely to the credibility of a victim's testimony and, thus, challenge the weight rather than the sufficiency of the evidence. *Commonwealth v. Kinney*, 157 A.3d 968, 971-72 (Pa. Super. 2017).

Instantly, Appellant argues that the identification evidence consisted of general and inconsistent descriptions of height and clothing, and that the Victim had limited opportunity to observe the masked perpetrators and could only see their eyes. Appellant's Brief at 17. Appellant contends that police never recovered the stolen cell phone or a weapon. *Id.* Finally, Appellant argues that he presented character evidence, which served as substantive evidence to raise a reasonable doubt of guilt. *Id.* at 24. Appellant asserts that the sum of the inconsistent and unreliable testimony coupled with the lack of physical evidence rendered insufficient evidence to establish that Appellant was one of the perpetrators of the crime. *Id.* at 26.

Appellant's challenge ignores the critical facts that on the night of the robbery, and again during trial, the Victim identified Appellant as the person who held the gun to his head during the robbery. **See** N.T. Trial, 12/7/17, at 7-10, 17. The juvenile court found the Victim's testimony to be credible, and we are bound by the juvenile court's credibility determinations. **See** Trial Ct.

Op., filed 3/26/18, at 5. Because the Victim's in-court identification was sufficient, by itself, to prove the identity element of the crime, the Commonwealth presented sufficient evidence to prove that Appellant was the perpetrator of the crime.

Appellant cites **Commonwealth v. Crews**, 260 A.2d 771 (Pa. 1970), to argue that identification evidence in this case was insufficient. However, **Crews** is easily distinguished from the instant case. In **Crews**, our Supreme Court held that the identification testimony, which was based solely on race, height, and a description of common clothing, was insufficient to sustain a conviction. **Id**. at 772. Unlike **Crews**, in this case, the trial court found credible the Commonwealth's descriptive evidence of Appellant's height and clothing but also – and most importantly – found credible the evidence of the Victim's in-court identification of Appellant as the male who held a gun to his head. Accordingly, Appellant's reliance on **Crews** is misplaced.

We acknowledge that most of Appellant's argument centers on claims that the identification evidence was inconsistent, unconvincing, or vague. These challenges are more properly characterized as challenges to the weight of the evidence, discussed **infra**. **See Kinney, supra** at 971-72.

In sum, the Victim's in-court identification of Appellant was sufficient evidence to prove that Appellant was the perpetrator of the crime and, therefore, Appellant's first issue lacks merit.

In his second issue, Appellant avers that the verdict is against the weight of the evidence and that a new trial should be granted in the interest of justice.

Appellant's Brief at 26. Appellant once again argues that the Victim's identification testimony was inconsistent, unconvincing, or vague. *Id.* at 28. Appellant also acknowledges that he failed to file a post-dispositional motion pursuant to Pa.R.J.C.P. 620[2] in juvenile court raising his weight of the evidence challenge, and asserts that we should remand this case to allow him to file a post-dispositional motion *nunc pro tunc*. *Id.* at 29. We agree.

Generally, a weight of evidence claim is "addressed to the discretion of the judge who actually presided at trial." *In re J.B.*, 106 A.3d 76, 95 (Pa. 2014) (citations and quotation omitted). Once a trial court rules on a weight claim, this Court can then review the trial court's ruling for an abuse of discretion. *Id.*

In *In re J.B., supra,* our Supreme Court determined that in juvenile delinquency matters, unlike in adult criminal cases, the failure to preserve a weight of the evidence challenge in a post-dispositional motion does not result in automatic waiver of the claim on appeal. *Id.* at 98. The Court determined that, even if an appellant raised the weight claim in a 1925(b) Statement and the juvenile court addressed it in a 1925(a) Opinion, the appropriate remedy is to remand the case to the juvenile court for the filing of a post-dispositional

---

[2] Rule 620(A), entitled "Optional Post-Dispositional Motion[,]" gives parties the right to make a post-dispositional motion and states, *inter alia*, that "[c]laims properly raised before or during the adjudicatory hearing shall be deemed issues preserved for appeal whether or not the party elects to file a post-dispositional motion on those claims." Pa.R.J.C.P. 620(A).

motion *nunc pro tunc* challenging the weight upon which the court could then make a specific ruling. ***Id.***

Like the juvenile appellant in ***In re J.B.***, Appellant here raised his challenge to the weight of the evidence for the first time in his Rule 1925(b) Statement. Although the juvenile court addressed the weight of the evidence challenge in its Rule 1925(a) Opinion, ***In re J.B.*** requires that we remand the case to give Appellant the opportunity to file a post-dispositional motion *nunc pro tunc* challenging the weight of the evidence. ***See also Interest of J.G., supra*** at 1187-88 (following ***In re J.B.*** and remanding to permit the juvenile to file a post-dispositional motion *nunc pro tunc* challenging the weight of evidence).[3]

In his third issue, Appellant avers that the juvenile court abused its discretion when it failed to hear any evidence as to whether Appellant was in need of treatment, rehabilitation, or supervision. Appellant's Brief at 30. Appellant argues that in order to sustain an adjudication of delinquency, the juvenile court needs to make a finding that a juvenile is in need of treatment, rehabilitation, or supervision, and there is no evidence in the record to support such a finding in this case. ***Id.*** at 34-35. Appellant further argues that the juvenile court did not give him an opportunity to present any evidence

---

[3] According to the Rules of Juvenile Court Procedure that were in place at the time of the December 27, 2017 Dispositional Order, we are constrained to remand this case. However, we note that effective October 1, 2018, in delinquency proceedings, a juvenile must raise a challenge to the weight of the evidence with the juvenile court judge or it will be waived pursuant to Rule 415. ***See*** Pa.R.J.C.P. 415.

regarding his need for treatment, rehabilitation, or supervision. *Id.* at 33. Appellant's argument lacks merit.

Before a juvenile court enters an adjudication, Section 6341 of the Juvenile Act provides, in relevant part, that after the juvenile court makes a finding that the child committed delinquent acts:

> The court shall then proceed immediately or at a postponed hearing, which shall occur not later than 20 days after such finding if the child is in detention or not more than 60 days after such finding if the child is not in detention, to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and to make and file its findings thereon.

42 Pa.C.S. § 6341(b). Section 6351 explicitly states: "[i]n the absence of evidence to the contrary, evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment, supervision or rehabilitation." *Id.*

Here, the juvenile court found that Appellant committed Robbery and Conspiracy, both as felonies of the first degree. As neither party presented evidence to the contrary, the evidence of the commission of the Robbery and Conspiracy acts itself was sufficient to show that Appellant was in need of treatment, supervision, or rehabilitation.

Appellant next argues that the juvenile court did not give him an opportunity to present evidence to the contrary. However, the juvenile court explains, and the record reflects, that Appellant did not request an opportunity to present evidence regarding whether he was in need of treatment,

supervision, or rehabilitation and, if he had, the juvenile court would have allowed it. Trial Ct. Op., filed 3/26/18, at 7 n.5. Further, Appellant failed to object when the juvenile court made a finding of delinquency without hearing additional treatment, supervision, or rehabilitation evidence from Appellant. *Id.* Accordingly, Appellant has waived this challenge. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008) ("A party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected.").

Finally, Appellant contends that the juvenile court abused its discretion when it committed him to an out-of-home placement. Appellant's Brief at 36. Appellant argues that the juvenile court failed to set forth adequate reasons why commitment was the least restrictive alternative and focused solely on the gravity of the offense rather than Appellant's individual circumstances. *Id.*

As stated above, we will not disturb the juvenile court's disposition absent a manifest abuse of discretion. *In Interest of J.G., supra* at 1184. Section 6301 states that the Juvenile Act should be interpreted and construed to effectuate the following purpose concerning delinquent children:

> Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S. § 6301(b)(2). Section 6301 also directs that juvenile courts use the least restrictive intervention consistent with community protection. ***In Interest of D.C.D.***, 171 A.3d 727, 738 (Pa. 2017) (citing 42 Pa.C.S. § 6301(b)(3)(i)).

Section 6352 of the Juvenile Act governs disposition of a delinquent child and essentially mirrors the language in Section 6301. Section 6352 provides that a court's disposition should be "consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare[.]" 42 Pa.C.S. § 6352(a). Further, "disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community." ***Id.***

Section 6352 provides a juvenile court with a variety of options available for placement of a delinquent child ranging from permitting the child to remain with his or her parents to committing the child to an institution. ***In Interest of D.C.D.***, 171 A.3d 727, 739 (Pa. 2017) (citing 42 Pa.C.S. § 6352(a)). Notably, Section 6352 provides "when confinement is necessary, the court shall impose the minimum amount of confinement that is consistent with the protection of the public and the rehabilitation needs of the child." 42 Pa.C.S. § 6352(a).

Instantly, the juvenile court considered testimony from Appellant's family members, reference letters from the community, and a psychological evaluation report, which included information that Appellant was excessively absent from school. *See* Trial Ct. Op., filed 3/26/18, at 7-8; N.T. Hearing, 12/17/17, at 3-22. The juvenile court heard evidence that Appellant's parents had recently divorced, which had placed a financial and emotional strain on the family. N.T. Hearing, 12/27/17, at 7. Additionally, Appellant's father testified that he did not believe his son had committed the crime. *Id.* at 11-13. The juvenile court considered the above information, as well as the gravity of the offense – that Appellant held a gun to the Victim's head and robbed him. The juvenile court determined that committing Appellant to out-of-home placement at Glen Mills was "consistent with the protection of public interest and best suited to [Appellant]'s treatment, supervision, rehabilitation, and welfare." Trial Ct. Op., filed 3/26/18, at 7-8. The juvenile court stated on the record that given the gravity of the offense, commitment was the least restrictive alternative. *See* N.T. Hearing, 12/27/17, at 9. Our review of the record supports the juvenile court's findings, and, thus, we find no abuse of discretion.

In sum, we conclude that the juvenile court did not abuse its discretion when it determined that there was sufficient identification evidence to adjudicate Appellant delinquent. Likewise, the juvenile court did not abuse its discretion when it determined that Appellant was in need of treatment, supervision, and rehabilitation and made a finding that commitment was the

least restrictive alternative. We remand for further proceedings limited to Appellant's challenge to the weight of the evidence.

Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/3/18