J-S56042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LUIS CAMACHO | : | |
| | : | |
| Appellant | : | No. 376 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 16, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005124-2017

BEFORE:  PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:          **FILED NOVEMBER 21, 2019**

Appellant Luis Camacho appeals from the judgment of sentence imposed following his jury trial convictions for one count each of first-degree murder, conspiracy, firearms not to be carried without a license, and possession of an instrument of crime (PIC).[1]  Appellant challenges the sufficiency of the identification evidence and the discretionary aspects of his sentence.  We affirm.

The trial court detailed the relevant facts and procedural history of this appeal as follows.

> On January 21, 2017, at approximately 2:20 p.m., [Appellant] arrived at the 2000 block of Bellmore Street wearing a black jacket with white chevrons on the front.  [Appellant] walked around the neighborhood waiting for [D]ecedent . . . and made stops at Rondon's grocery store on the corner of Bellmore and Amber Streets and later LJ's Café on the corner of Frankford Avenue and

---

[1] 18 Pa.C.S. §§ 2502(a), 903, 6106(a)(1), and 907(a), respectively.

Orleans Street. At approximately 3:48 p.m., [Decedent] pulled up and parked in front of 2049 Bellmore Street in a Dodge Charger. After walking toward 2049 Bellmore Street, [Appellant] saw [Decedent's] parked vehicle, stopped walking, and made a phone call. Still on his phone, [Appellant] then turned around and walked to and entered a house on 2106 Bellmore Street. When [Appellant] reemerged from the house a few minutes later, he was wearing a Houston Texans sweatshirt and was with another man in a gray sweatshirt. [Appellant] and the man in the gray sweatshirt walked down the street and [Appellant] sat on the steps of 2053 Bellmore Street while the man in the gray sweatshirt sat on the steps of 2055 Bellmore Street. After spotting [Decedent], the man in the gray sweatshirt got up from the steps, approached [Decedent] and shot at him from close range. After seeing the other man shoot at [Decedent], [Appellant] got up from the steps, pulled out a gun, and also shot at [Decedent]. Thereafter, [Appellant] and the other man fled the scene of the crime.

Officers responded to a radio call of a shooting and arrived on scene at around 4:15 p.m. Officers rushed [Decedent] to Temple Hospital, where he was pronounced dead. The medical examiner determined that the cause of death was multiple gunshot wounds to the head.

Philadelphia police detectives then conducted an investigation of the shooting. Officers located and recovered video from three surveillance cameras from 2053 Bellmore Street, Rondon's grocery store, and LJ's Café. Detectives poured over hours of footage from the time preceding, during, and after the shooting. Detectives found footage of the man in the chevron jacket at Rondon's. The footage also showed that the man had distinctive tattoos on his hands. Detectives ran these tattoos through their database and the tattoos matched [Appellant].

Detectives discovered [Appellant was on state parole], and his supervisor was Justin Mohn. Detectives sent Mohn two surveillance videos from the scene of the crime. The first video showed a man wearing a chevron jacket on the 2000 block of Bellmore Street shortly before the shooting. After watching this video, Mohn identified the man as [Appellant]. Mohn also stated that he was about 80% certain that the man in the Houston Texans sweatshirt who shot at [Decedent] was also [Appellant]. Mohn informed police that [Appellant] was required to wear a GPS ankle monitor at all times as a condition of his [parole]. The GPS

monitor showed that [Appellant] was present on the 2000 block of Bellmore Street prior to the shooting and at the time of the shooting.

[Appellant] was arrested on March 27 2017. . . . While in prison awaiting trial, [Appellant] told another prisoner, Christopher Carrasquillo, about his involvement in the murder on Bellmore Street. Thereafter, Carrasquillo told detectives what [Appellant] had told him.[2] After Carrasquillo was released from prison, [Appellant], who was still in prison awaiting trial and had discovered that Carrasquillo gave a statement to detectives regarding the murder, made phone calls to a friend and discussed intimidating Carrasquillo.[fn2] [Appellant] thereafter called Carrasquillo in an attempt to intimidate him.

> [fn2] Commonwealth exhibit C-20 is a transcript of the taped conversation between [Appellant] and his friend . . . . While the transcript was not admitted into evidence, it shows the contents of the taped call, which was admitted into evidence and played to the jury.

Trial Ct. Op., 4/30/19, at 2-5 (record citations and footnote omitted).

On August 16, 2018, the jury found Appellant guilty of first-degree murder, conspiracy to commit murder, carrying a firearm without a license, and PIC. That same day, the trial court sentenced Appellant to a mandatory term of life imprisonment for murder, plus a consecutive sentence of twenty to forty years' imprisonment for conspiracy. The trial court also imposed

---

[2] The Commonwealth called Carrasquillo to testify at trial. Carrasquillo testified that he did not remember giving a statement to detectives. The Commonwealth confronted Carrasquillo with his typed, signed, and contemporaneously video-recorded statement to detectives. **See** N.T., 8/14/18, at 165-172. Carrasquillo's prior statement to detectives was admitted as substantive evidence.

concurrent prison sentences of three-and-a-half to seven years for carrying a firearm without a license and three months to two years for PIC.

Appellant filed a timely post-sentence motion on August 26, 2018. The trial court denied the motion on December 10, 2018. Appellant did not file a direct appeal. On January 17, 2019, Appellant filed a counseled petition pursuant to the Post Conviction Relief Act[3] (PCRA) seeking reinstatement of his direct appeal rights *nunc pro tunc*. The PCRA court granted relief on February 1, 2019.

Appellant timely filed a notice of appeal on February 4, 2019. On February 25, 2019, Appellant filed a court ordered Pa.R.A.P. 1925(b) statement. The trial court filed a responsive Rule 1925(a) opinion.

Appellant raises two issues for our review:

1. Whether the verdict was against the sufficiency of the evidence when there was no fingerprint or DNA linking [Appellant] to the crime, and the assailant was wearing different clothing at the critical time of the homicide.

2. Whether [Appellant's] consecutive sentence of [twenty to forty] to life without the possibility of parole was excessive and unjust.

Appellant's Brief at 4 (some formatting altered).

In his first issue, Appellant argues that the evidence presented at trial was insufficient to establish that he was one of the two assailants who shot at Decedent. *Id.* at 11. Appellant contends that the Commonwealth failed to

---

[3] 42 Pa.C.S. §§ 9541-9546.

prove that he was one of the assailants because he was seen wearing a black jacket with white chevrons hours before the shooting. *Id.* Appellant asserts that Parole Agent Mohn's testimony identifying him as the shooter wearing the Houston Texans sweatshirt was unreliable due to the poor quality of the video images. *Id.* Specifically, Appellant argues:

> Agent Mohn testified that he "first" watched the video of [A]ppellant in the Rondon Grocery Store. In that video, [A]ppellant is clearly and 100% identified. Agent Mohn then watched the 2nd video in which two assailant[s] are walking to the murder scene. Agent Mohn testified that he was 70-80% sure it was [A]ppellant. Agent Mohn had never seen [A]ppellant wearing that Houston Texan[s] NFL [sweatshirt]. Agent Mohn could not identify the face. That assailant had a similar structure to [A]ppellant. But that structure is not unique. [Trial c]ounsel's question to Agent Mohn if you did not see the first video of the appellant in Rondon Grocery Store would you still state that you recognized the appellant as the assailant in the second video. Agent Mohn's response was "NO". The way the two videos were presented to Agent Mohn, it stacked the identification against [A]ppellant as one of the two assailants.

*Id.*

Appellant concedes that he was in the area of the shooting to visit his girlfriend. *Id.* However, Appellant insists he was "at the wrong place, at the wrong time." *Id.* In sum, Appellant argues that the evidence presented was insufficient to identify him as the shooter in the Houston Texans sweatshirt.

The Pennsylvania Supreme Court has explained our standard for reviewing the sufficiency of the evidence as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, supports all of the elements of the offense beyond a reasonable

doubt. In making this determination, we consider both direct and circumstantial evidence, cognizant that circumstantial evidence alone can be sufficient to prove every element of an offense. We may not substitute our own judgment for the jury's, as it is the fact finder's province to weigh the evidence, determine the credibility of witnesses, and believe all, part, or none of the evidence submitted.

*Commonwealth v. Cooper*, 941 A.2d 655, 662 (Pa. 2007) (citations omitted). "Because a determination of evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Williams*, 176 A.3d 298, 305 (Pa. Super. 2017) (citation omitted).

To support a guilty verdict for "first-degree murder, the Commonwealth must prove that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Johnson*, 160 A.3d 127, 136 (Pa. 2017) (citation omitted). Further, "[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018) (quotation marks and citation omitted).

Instantly, Appellant challenges the sufficiency of the evidence identifying him as the perpetrator. Therefore, we will limit our review to whether the Commonwealth established this element of the crime. *See Commonwealth v. Cain*, 906 A.2d 1242, 1244 (Pa. Super. 2006) (declining

to address the sufficiency of evidence supporting every element where an appellant challenges identification evidence).

We first note that identification evidence can be challenged for its sufficiency to support a conviction, in addition to the definitiveness and certainty of the identification testimony, which goes to its weight.

As to the sufficiency of identification evidence, this Court has held:

> [E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. . . . Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

**Commonwealth v. Orr**, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citations and quotation marks omitted).

"A challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." **Commonwealth v. Kinney**, 157 A.3d 968, 971 (Pa. Super. 2017) (citation omitted and some formatting altered), *appeal denied*, 170 A.3d 971 (Pa. 2017). Additionally, any claims not raised in a court-ordered Rule 1925(b) statement are waived. **Commonwealth v. Bullock**, 948 A.2d 818, 823 (Pa. Super. 2008) (holding claims waived that were not raised in 1925(b) and abandoned on appeal when not argued in brief).

Instantly, a review of the record establishes the following. Agent Mohn testified that he reviewed the surveillance camera footage from near the scene of the shooting. N.T., 8/14/18, at 120. Agent Mohn positively identified Appellant as the individual wearing the black jacket with white chevrons several hours before the shooting. *Id.* at 122-23. Agent Mohn further testified that he was eighty percent sure that Appellant was the individual wearing the Houston Texans sweatshirt shortly before the shooting. *See id.* at 122-24.

In addition to Agent Mohn's testimony, the Commonwealth presented evidence based on the GPS data from Appellant's ankle monitor. Specifically, Detective James Dunlap testified as an expert in forensic video and mapping GPS data. *See* N.T., 8/15/18, at 122-27. Detective Dunlap's testimony combined the surveillance footage with the GPS data to create "compilation videos." *See id.* at 127-28. According to Detective Dunlap's testimony and the compilation videos, the GPS data matched Appellant's movements when Appellant was wearing the black jacket with white chevrons. The GPS data was also consistent with the movements of the individual wearing the Houston Texans sweatshirt shortly before, during, and after the shooting.

Furthermore, the Commonwealth presented Carrasquillo's prior statement to detectives. In that statement, Carrasquillo informed detectives that Appellant told him that Appellant and another man shot and killed someone near Frankford Avenue. Appellant also told Carrasquillo that the incident was caught on video, but Appellant's face could not be clearly seen in

the video. After learning that Carrasquillo talked to detectives, Appellant contacted Carrasquillo from prison. A recording of the phone call between Appellant and Carrasquillo was played to jury and indicated that Appellant threatened Carrasquillo and called him a "rat." *See* N.T., 8/14/18, at 154-56; *cf. id.* at 159.

To the extent that Appellant challenges the certainty or reliability of Agent Mohn's testimony identifying Appellant as the individual in the Houston Texans sweatshirt, his argument goes to the weight and not the sufficiency of the evidence. *See Orr*, 38 A.3d at 874; *Kinney*, 157 A.3d at 971. Although raised in his post-sentence motion, Appellant did not challenge the weight of the evidence in his Rule 1925(b) statement, and he does not include a weight of the evidence claim in his appellate brief. Accordingly, because Appellant did not properly preserve his weight claim, it is waived. *See* Pa.R.A.P 1925(b)(4)(vii), 2116(a), 2119(a); *Bullock*, 948 A.2d at 823.

Viewing this evidence in a light most favorable to the Commonwealth as the verdict winner, ample direct and circumstantial evidence proved that Appellant was the assailant in the Houston Texans sweatshirt. *See Cooper*, 941 A.2d at 662; *Orr*, 38 A.3d at 874. Agent Mohn's identification of Appellant from the video footage was corroborated by the GPS evidence from Appellant's ankle monitor, as well as Carrasquillo's statement to detectives. Accordingly, the Commonwealth met its burden of proving beyond a reasonable doubt that Appellant was one of the perpetrators who shot and killed Decedent. *See*

*Cooper*, 941 A.2d at 662. Therefore, Appellant's first issue challenging the sufficiency of the evidence fails.

In his second issue, Appellant argues that the consecutive sentence of twenty to forty years' imprisonment for conspiracy is excessive and unjust. Appellant's Brief at 12. Appellant contends the trial court abused its discretion by running the sentence consecutive to a mandatory term of life imprisonment. *Id.* Appellant insists the public is adequately protected by his mandatory life sentence. *Id.* at 13. Appellant argues the consecutive sentence is unnecessary and "tends to take away hope." *Id.*

Generally, the trial court has "discretion to impose [its] sentence concurrently or consecutively to other sentences being imposed at the same time." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (internal quotation marks and citation omitted). "[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted). Therefore, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citation omitted).

This Court has held that

> when the appellant has not included a Rule 2119(f) statement and the appellee has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate . . . . However, this option is lost if the appellee objects to a 2119(f) omission. In such circumstances, this Court is precluded from reviewing the merits of the claim and the appeal must be denied.

***Commonwealth v. Kiesel***, 854 A.2d 530, 533 (Pa. Super. 2004) (citations omitted).

Here, Appellant timely appealed and properly preserved his claim in a post-sentence motion and his Rule 1925(b) statement. ***See Corley***, 31 A.3d at 296. However, Appellant did not include a Rule 2119(f) statement in his brief, as the Commonwealth pointed out in its brief. ***See*** Commonwealth's Brief at 10. Accordingly, Appellant's challenge to the discretionary aspects of his sentence is waived.[4] ***See Kiesel***, 854 A.2d at 533.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/19

---

[4] Even if Appellant preserved his claim in a Rule 2119(f) statement, his issue would not raise a substantial question. ***See Commonwealth v. Burgess***, 455 A.2d 631 (Pa. 1983) (finding no error in consecutive sentences for first-degree murder and PIC).