J-S06022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                        :            PENNSYLVANIA
                                        :
               v.                              :
                                        :
                                        :
MANUEL GONZALEZ                    :
                                        :
                 Appellant          :       No. 394 EDA 2020

Appeal from the Judgment of Sentence Entered January 8, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006725-2018

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:               **FILED:  JUNE 4, 2021**

Appellant Manuel Gonzalez appeals from the judgment of sentence imposed following his convictions for second-degree murder and related offenses.  Appellant challenges both the sufficiency and weight of the evidence supporting his convictions.  We affirm.

The trial court summarized the underlying facts of this matter as follows:

Complainant Shaun Yeager testified that on the evening of March 3, 2018[,] he made plans to go to Trilogy nightclub in Philadelphia with his longtime friend, Corey Boykin.  Yeager drove to Boykin's house around 11 o'clock at night, the two talked and then Boykin drove them both to Trilogy.  Boykin parked his car close by the club and the two men continued to talk in the parked car.  After a short while, Boykin and Yeager entered Trilogy.  Yeager testified that he and Boykin each had one or two drinks in the club and that he was smoking marijuana, but Boykin was not.  After about an hour, Boykin and Yeager bought food inside the club and left

---

[*] Retired Senior Judge assigned to the Superior Court.

to eat it in Boykin's car. Once they were back in the car, the friends started talking again as they ate the food. Ten minutes after they got into the car, Yeager heard a tap on the car window. Yeager testified that as he was looking around to see where the noise came from, he saw a silhouette and immediately glass busted into the car and shots were fired. Yeager felt a bullet hit him and jumped into the backseat to take cover. Yeager screamed to Boykin to drive the car away but Boykin did not respond and Yeager passed out. When Yeager woke up, he saw the attacker on top of Boykin, removing his jewelry. Assuming the shooter wanted their jewelry, Yeager removed his own jewelry and threw it towards the assailant. Yeager again passed out and when he woke up he called 911 and reported the attack before passing out again. The next time Yeager woke up he was being removed from the car by first responders.

Later, at the hospital, Yeager learned that he had been shot 11 times. Boykin was pronounced dead at Hahnemann Hospital. His autopsy showed he died as a result of seven gunshot wounds. On March 30, 2018[,] Yeager was interviewed by detectives in the hospital and was able to identify Appellant as the shooter from photographs taken from the club's security footage. The following day Yeager positively identified Appellant from a photo array. The homicide fugitive squad was assigned to locate Appellant on May 1, 2018. On June 25, 2018, Appellant was stopped in New Mexico by a local police department. Appellant was then brought back to Philadelphia and arrested on July 18, 2018.

*   *   *

On July 18, 2018[,] Appellant was arrested and charged with murder, two counts of robbery, possession of firearm prohibited, firearms not to be carried without a license, carrying firearms in public in Philadelphia, two counts of theft, possession of an instrument of a crime, conspiracy, attempted murder, aggravated assault and related charges. On December 2, 2019, after a jury trial before this [c]ourt, Appellant was found guilty of [one count each of second-degree murder, attempted murder, aggravated assault, conspiracy to commit robbery, and PIC, two counts each of theft and robbery, and all three counts of VUFA.[1]] The

_____

[1] 18 Pa.C.S. §§ 2502(b), 901(a), 2702(a), 903, 3701(a)(1)(i), 907(a), 3921(a), 3701(a)(1)(i), 6105(a)(1), 6106(a)(1), and 6108, respectively.

- 2 -

remaining charges were *nolle prossed*. That same day, Appellant was sentenced to life in prison without the possibility of parole and a consecutive 10 to 20 years of incarceration. Post sentence motions were filed on December 5, 2019[,] and denied on January 8, 2020.

Trial Ct. Op., 7/8/20, at 1-3.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises the following issues for review:

1. Was there insufficient evidence to sustain the convictions on all counts?

2. Were the verdict for all counts against the weight of the evidence?

Appellant's Brief at 4.

In his first claim, Appellant challenges the sufficiency of the Commonwealth's identification evidence. In support, Appellant argues that Yeager, "who was under the influence of alcohol and marijuana, could not clearly see the shooter when the crime was taking place." *Id.* at 8. Further, Appellant asserts that Yeager "did not identify Appellant in any photo array but rather was shown still photos of just Appellant taken from inside the nightclub prior to the incident" and that "[s]uch an identification is unduly suggestive and tainted, and should be given less weight than other forms of identification." *Id.* Appellant also argues that "no DNA nor any fingerprints of Appellant were recovered from the crime scene" and that "[t]he weapon in

question was never linked to Appellant through any evidence other than cooperator Rashawn Barr's testimony." *Id.* at 10. Finally, Appellant asserts that the shooter was wearing black sneakers, but Appellant was photographed wearing teal blue sneakers, an issue that was raised by "defense counsel in closing arguments yet never addressed by the Commonwealth in its closing." *Id.* at 9. Therefore, Appellant contends that there was insufficient evidence to prove that he was the shooter.

The Commonwealth responds that to the extent Appellant challenges the credibility of the witness testimony, that claim goes to the weight, not the sufficiency, of the evidence. Commonwealth's Brief at 8. With respect to Appellant's assertion regarding DNA, the Commonwealth asserts that "as in other areas, an absence of evidence is not evidence of absence." *Id.* The Commonwealth argues that it presented "substantial evidence, including [Yeager's] positive identification of [Appellant] by photographic array" which was "corroborated by a bystander, Mr. Davenport, who reported the incident to the police." *Id.* Further, the Commonwealth asserts that it presented "video surveillance footage depicting [Appellant] exiting the nightclub 10 minutes before the shooting." *Id.* Additionally, the Commonwealth notes that "Mr. Barr, an acquaintance of [Appellant], shared with homicide detectives that [Appellant] requested to borrow his 'tool,' a semiautomatic .40-caliber gun, which matched the historical ballistics cell analysis that corroborated with all the witness's testimony and the bullets in decedent's car." *Id.* Finally, the Commonwealth argues that although Appellant claims

that he was wearing teal sneakers on the night of the shooting, "[a]n alleged discrepancy in the color of [Appellant's] sneakers does not negate Appellant's guilt." *Id.* at 9-10.

When reviewing a sufficiency claim, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and formatting altered).

Here, to the extent Appellant challenges the sufficiency of the evidence identifying him as the perpetrator, we will limit our review to whether the Commonwealth established the identification element of the crimes. *See Commonwealth v. Cain*, 906 A.2d 1242, 1244 (Pa. Super. 2006) (declining to address the sufficiency of evidence as to every element of the crime where the appellant only challenged the identification evidence).

This Court has held that, "[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the

Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018) (citation omitted). Further, "[a] victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime." ***Commonwealth v. Johnson***, 180 A.3d 474, 478 (Pa. Super. 2018) (citation omitted).

Moreover, we have explained that

evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

***Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*) (citations omitted and formatting altered).

Instantly, the trial court addressed Appellant's claim as follows:

Appellant challenges the sufficiency and weight of the evidence based on the following assertions: there was no eyewitness to the offense other than a cooperating co-conspirator, Appellant's DNA was not at the crime scene, Appellant's fingerprints were not at the crime scene, the weapon in question was never recovered and was never linked to Appellant through any evidence other than the cooperator, the sneakers worn in the photo of the shooter were black whereas a photo of Appellant leaving the nightclub less than 10 minutes prior showed him wearing teal blue sneakers, the testimony of the cooperator and eyewitness Jamal Hughes were contradictory, the identification of Appellant by Yeager was unduly suggestive and tainted.

- 6 -

* * *

> . . . Yeager's testimony was corroborated by eyewitness testimony from Raheem Davenport, cooperating co-conspirator Rashawn Barr, and video evidence from Trilogy nightclub. The crime scene officers, responding police officers, the medical examiner, a firearms identification expert, an expert in historical cell site analysis and an expert in DNA analysis testimony all testified to evidence which further corroborated the eyewitness testimony of Yeager, Davenport and Barr.

Trial Ct. Op. at 3-6.

Based on our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to establish Appellant's identity as the perpetrator. *See Palmer*, 192 A.3d at 89; *see also Smyser*, 195 A.3d at 915. Even without the corroborating evidence discussed by the trial court, Yeager's in-court identification of Appellant, *see* N.T. Trial, 11/21/19, at 102, was sufficient to prove that Appellant was the shooter. *See Johnson*, 180 A.3d at 478; *Smyser*, 195 A.3d at 915; *Orr*, 38 A.3d at 874. Further, to the extent Appellant challenges the identification evidence based on conflicts in evidence, the accuracy of the witness's identification, or witness credibility, those issues go to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Kinney*, 157 A.3d 968, 972 (Pa. Super. 2017). Therefore, Appellant is not entitled to relief on his sufficiency claim.

**Weight of the Evidence**

Appellant also argues that his convictions were against the weight of the evidence. Appellant's Brief at 9. Specifically, Appellant reiterates his assertion

that Yeager's identification testimony was unreliable because (1) he did not clearly see the perpetrator during the shooting and (2) his out-of-court identification of Appellant was "unduly suggestive and tainted." *Id.* at 10. Further, Appellant asserts that both the surveillance footage and the testimony connecting him to the murder weapon were inconsistent with other evidence presented at trial. *Id.* Therefore, Appellant concludes that the trial court erred in denying his post-sentence motion. *Id.*

The Commonwealth responds that the weight of the evidence supports the jury's verdict. Commonwealth's Brief at 5. The Commonwealth asserts that there was overwhelming evidence presented at trial, including eyewitness testimony from several witnesses and a witness from whom Appellant borrowed the murder weapon. *Id.* at 5-6. Further, the Commonwealth notes that it "presented ballistics analysis matching the reported gun used and surveillance video footage depicting [Appellant's] presence outside of [the] nightclub on the night of the shooting." *Id.* at 6.

When reviewing a weight claim, our standard of review is as follows:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists

of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015) (*en banc*) (citations omitted and formatting altered).

Here, the trial court rejected Appellant's claim, concluding that "[b]ased on the evidence presented at trial, there is nothing in the jury's verdict that shocks one's sense of justice." Trial Ct. Op. at 7.

Based on our review of the record, we discern no abuse of discretion by the trial court. ***See Gonzalez***, 109 A.3d at 723. The jury, as fact-finder, was entitled to make credibility determinations concerning the victim's identification testimony and weigh that testimony against the other evidence presented at trial. ***See id.*** Therefore, the trial court did not abuse its discretion in rejecting Appellant's weight claim. ***See id.*** Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/4/21

- 9 -