J-A16019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVIN WILSON | : | |
| | : | |
| Appellant | : | No. 2064 EDA 2021 |

Appeal from the Order Entered August 3, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007682-2016

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 19, 2022**

Devin Wilson (Appellant) appeals *nunc pro tunc* from the judgment of

sentence[1] entered in the Philadelphia County Court of Common Pleas following

his jury convictions of first-degree murder, carrying a firearm without a

license, and possessing an instrument of crime (PIC).[2]  Appellant challenges

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant states he takes this appeal from the September 17, 2021, order denying his post-sentence motion.  Appellant's Notice of Appeal, 10/19/21. Further, in Appellant's reply brief, he states he is "appealing from an order granting a [Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546,] petition in part[.]"  Appellant's Reply Brief at 1.  This appeal, however, properly lies from the judgment of sentence, entered on August 3, 2017, made final by the denial of post-sentence motions.  ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted).  We have corrected the caption accordingly.

[2] 18 Pa.C.S. §§ 2502(a), 6106(a)(1), and 907(a), respectively.

the sufficiency and weight of the evidence, arguing the Commonwealth did not present reliable evidence of his identity or motive. Appellant also argues the trial court erred when it did not address his claims of ineffectiveness of trial counsel. We affirm.

The underlying charges stem from the May 12, 2016, homicide of Kenneth Hill (Victim). Tricia Clay, a witness, told police Appellant was the perpetrator. Police arrested Appellant later that night and charged him with one count each of first-degree murder, carrying a firearm without a license, and PIC. A first jury trial commencing April 17, 2017, resulted in a hung jury. *See* Trial Disposition & Dismissal Form, 4/24/17.

This case proceeded to a second jury trial on August 3, 2017, where Appellant was represented by Scott Kramer, Esquire. The Commonwealth presented the following evidence.

Clay testified that she and Appellant have known each other since 2009, he lived "[d]own the block[,]" and she saw him "two to three times" a week. N.T., 8/2/17, at 55-56.[3] Clay admitted to having "a crack problem" most of her adult life, including the time of trial, has bipolar disorder, and suffers from schizophrenia. *Id.* at 57, 102. Clay's drug use and schizophrenia sometime

---

[3] Although the jury trial transcripts were not included in the original certified record, Appellant supplied a copy of these transcripts in the reproduced record. The Commonwealth does not object, and thus, we consider this copy of the transcripts. *See* Pa.R.A.P. 1921, *note* (where the accuracy of a pertinent document is undisputed, we may consider that document if it is in the reproduced record).

cause her to hallucinate there are "bugs on [her] body" and "shadows[,]" but she does not "see people change their face[.]" *Id.* at 107-08, 116, 123.

On the evening of May 12, 2016, Clay smoked "crack" on the "church steps" at Park Avenue and Somerset Streets in Philadelphia, Pennsylvania. N.T., 8/2/17, at 57. While getting high with Victim and three others, she observed Appellant "approach[ the] group[.]" *Id.* at 57-58. Although Clay was high at the time, she stated crack "doesn't impair" her memory, has never "caused [her] not t[o] recognize someone [she has] known for several years[,]" and she had no doubt "as to who was standing in front of" her at that time. *Id.* at 62-63, 89. Clay did not "have any issues or problems seeing [Appellant] or knowing who it was[.]" *Id.* at 58-59. Appellant approached, stood next to Victim, and Clay noticed Appellant had a "long banana clip" to a gun in his right pocket. *Id.* at 59-60. Appellant told them he was "about to get out of [t]here[,]" and suddenly "[p]ulled out a gun and shot [Victim] in his head." *Id.* at 59. Appellant then "walked up towards Somerset." *Id.* at 61.

Clay testified that after the shooting, she left the scene. N.T., 8/2/17, at 61. She did not wait for the police to arrive because she was "scared [of] being hurt." *Id.* at 61-62. Clay then ran into her cousin, Melody James, and told her that Appellant shot Victim. *Id.* at 63. Later that night, police went to Clay's home and, ultimately, she cooperated with the police and gave a written and video recorded statement. *Id.* at 64-65, 70. Clay acknowledged

that, subsequently, the Commonwealth provided her with money to get a "new ID [in] an effort to get [her] into rehab." *Id.* at 76.

Philadelphia Police Officer Nicholas Lewis testified that on the night of the shooting, he arrived at the scene to aid in the investigation. N.T., 8/2/17, at 218. James, Clay's cousin, approached Officer Lewis and handed him a cigarette box with the handwritten note, "Devin AKA Yola from Park and Somerset just killed that man." *Id.* at 219-20. James did not testify at trial.

The Commonwealth also presented the testimony of Philadelphia Police Detective Thorsten Lucke, an expert witness in video recovery and analysis. N.T., 8/2/17, at 157. Detective Lucke recovered, prepared, and analyzed surveillance videos relevant to the case, but did not aid in "any other aspect of this investigation[.]" *Id.* at 158-59. The Commonwealth presented the surveillance video at trial and Detective Lucke concluded that after watching it, he could not "tell . . . whose face that is[,]" but could give a "general physical description" of the perpetrator. *Id.* at 187.

Philadelphia Police Officer Edward Heuser testified that for "[a]pproximately 8 months" prior to the homicide, he patrolled Park Avenue and Somerset Street. N.T., 8/2/17, at 195-96. Officer Heuser stated he became "familiar with" Appellant because he saw him "[e]very day" at the intersection. *Id.* at 196. Officer Heuser was not present at the time of the murder, but watched the surveillance video and recognized Appellant's height, build, and "pigeon toe[d]" walk. *Id.* at 197-99. Officer Heuser also stated that he was familiar with Appellant's social media and the hoodie in the

surveillance video "resembled another hoodie that" Appellant wore in a photo on his Instagram account. *Id.* at 200. On June 13, 2016, Officer Heuser arrested Appellant. Sentencing Order, 8/3/17. After his arrest, aiding officers executed a search warrant on Appellant's home where they recovered the hoodie depicted in the surveillance video. N.T., 8/3/17, at 39, 41-42.

Appellant did not testify at trial. The jury found him guilty of first-degree murder, carrying a firearm without a license, and PIC. The trial court immediately imposed concurrent sentences of life imprisonment for murder, three and one half to seven years' incarceration for carrying a firearm without a license, and four months to five years' incarceration for PIC. Appellant did not file a post-sentence motion.

We glean the remaining procedurally history from the trial court opinion:

> [Appellant, represented by Attorney Kramer,] appealed from the judgment of sentence on September 1, 2017, claiming that the verdict was against the weight of the evidence and that the evidence was insufficient to sustain the conviction. On March 27, 2019, the Superior Court affirmed [Appellant's] judgment of sentence on the basis that [he] had waived both of his claims. [**Commonwealth v. Wilson**, 2816 EDA 2017 (unpub. memo. at 3-4) (Pa. Super. March 27, 2019). Appellant] did not petition the Pennsylvania Supreme Court for *allocatur*.

> [Appellant] then filed a *pro se* [PCRA] petition . . . on May 8, 2020. Michael McDermott, Esquire was appointed to represent [Appellant] on July 1, 2020. On February 4, 2021, [Attorney] McDermott filed an amended PCRA petition seeking to restore [Appellant's] right to file post-sentence motions and a direct appeal *nunc pro tunc*.

> On March 16, 2021, Cheryl Sturm, Esquire, whom [Appellant] had privately retained, entered her appearance on [his] behalf[.] That same day, [Attorney] Sturm filed a supplemental amended petition adding claims of ineffective

assistance of trial and appellate counsel.[4] The [PCRA c]ourt scheduled an evidentiary hearing solely on the issue of whether [Appellant's] PCRA petition had been timely filed.

On August 16, 2021, following an evidentiary hearing, the [PCRA c]ourt determined that [Appellant's] PCRA petition was timely. Thereafter, the [PCRA c]ourt granted [his] PCRA petition and reinstated his right to file post-sentence motions and a direct appeal. [Appellant] then filed a post-sentence motion[, raising ineffective assistance of Attorney Kramer and challenges to both the weight and the sufficiency of the evidence,] on August 19, 2021, which the Court denied on September 17, 2021.

Trial Ct. Op. 11/16/21, at 1-2 (paragraph breaks added).

Appellant filed the present timely appeal and complied with the court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether the evidence presented by the Commonwealth at trial was insufficient to sustain the convictions?

2. Whether the convictions were against the weight of the evidence?

3. Whether the trial court should have granted a new trial based upon ineffective assistance of trial counsel?

4. Whether the trial court erred in declining to hold an evidentiary hearing on Appellant's ineffective assistance of trial counsel claims?

---

[4] In his supplemental PCRA petition, Appellant alleged counsel was ineffective for failing to do the following: (1) object to the admission of the handwritten note on Confrontation Clause and hearsay grounds; (2) object to the Commonwealth's comments regarding James during its closing arguments; (3) file post-sentence motions; and (4) properly preserving challenges to both the weight and sufficiency of the evidence. Appellant's Supplemental Petition for Post-Conviction Collateral Relief, 3/16/21, at 1-3.

Appellant's Brief at 2-3.

First, Appellant asserts the evidence was insufficient to sustain his convictions where the Commonwealth presented "unreliable" identification testimony, no physical evidence, and no evidence of motive. Appellant's Brief at 18-20. Appellant offers the same arguments in support of his challenge to the weight of the evidence.[5] *Id.* at 22-24.

Preliminarily, we remind counsel that "[a] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence[. T]he former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." *See Commonwealth v. Kinney*, 157 A.3d 968, 971 (Pa. Super. 2017) (citation omitted). A claim —

> that the evidence was insufficient because [the defendant] was wrongly identified as the perpetrator of the crimes based on "unbelievable identification testimony" of the victim [—] goes to the credibility of the witness's testimony, and is, therefore, not an attack on the sufficiency of the evidence, but an allegation regarding the weight it should have been afforded.

*Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013). *See also Kinney*, 157 A.3d at 971 (claim challenging "any indefiniteness and

---

[5] Appellant properly preserved his weight claim in his post-sentence motion pursuant to Pa.R.Crim.P. 607. *See* Pa.R.Crim.P. 607(A)(1)-(3) (a challenge to the weight of the evidence must be raised before the trial court either before sentencing or in a post-sentence motion); *see also* Appellant's Post-Sentence Motion Pursuant to Rule 720, Pennsylvania Rules of Criminal Procedure, 8/19/21, at 8-9.

uncertainty in . . . identification testimony goes to its weight") (citation omitted). Accordingly, we construe Appellant's arguments to be a challenge to the weight, not sufficiency, of the evidence.

Appellant presents numerous arguments in support of his assertion that there was no reliable evidence identifying him as the shooter. First, he asserts Clay's testimony was "unreliable as a matter of law" because of her drug use and diagnoses for bipolar disorder and schizophrenia, which "have manifested hallucinations and visions in the past." Appellant's Brief at 18-19, 22-23. Appellant highlights Clay's trial testimony that "she did not know whether she was hallucinating at the time of the homicide." *Id.* at 19, 22-23. Second, Appellant challenges the trial court's finding that "Clay's testimony was corroborated by . . . the discovery of the hoodie" and video evidence.[6] *Id.* at

_____

[6] Appellant briefly alleges that, contrary to the trial court's conclusions, Officer Heuser's testimony and Appellant's cell phone records do not corroborate Clay's testimony. Appellant's Brief at 23. However, he provides no further explanation of this argument.

Appellant also avers Detective Lewis's testimony, regarding the note on the cigarette box communicating that Appellant killed Victim, should not have been admitted into evidence. Appellant's Brief at 20. However, Appellant states he addresses this argument in his ineffective assistance claims. *Id.*

Finally, In Appellant's reply brief, he raises a new argument that the video evidence was not authenticated and is a "fabrication." Appellant's Reply Brief at 9-10. Appellant does not cite the place in the record where he preserved this argument and offers no discussion or authority to support. Thus, this argument is waived. *See* Pa.R.A.P. 2113(a) (reply brief may only "reply to matters raised by appellee's brief"), 2119(a) (argument must include discussion and citation to authority), (e) (argument must refer to a place in the record where a party preserved a claim).

23. Appellant maintains that Clay testified inconsistently at different proceedings that the shooter was wearing a jacket, a windbreaker, and a coat. *Id.* He contends these statements also conflict with Detective Lucke's testimony that the shooter in the video "wore a hoodie sweatshirt, not a jacket or windbreaker." *Id.* at 23-24.

Third, Appellant alleges Officer Heuser's identification of Appellant conflicts with Detective Lucke's testimony. Appellant's Brief at 23-24. Appellant insists that Officer Heuser's identification was "not reliable as a matter of law" and he "was not qualified" to identify Appellant from video surveillance. *Id.* at 20. Fourth, Appellant contends the Commonwealth did not present evidence of motive, nor any physical or forensic evidence linking him to the crime scene. *Id.* at 19-20. We decline to grant relief.

This Court's standard of review of a weight of the evidence claim is well-settled:

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted). A trial court will not grant a new trial because of a mere conflict in the testimony. *Commonwealth v. Mucci*, 143 A.3d 399, 410 (Pa. Super.

2016) (citation omitted). Further, the jury, as fact finder, is free to believe all, some, or none or the evidence presented. ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1078 (Pa. 2017) (citations omitted). The jury is also free to "resolve any inconsistencies or discrepancies in the testimony in either party's favor." ***Id.***

> This Court will not find an abuse of discretion
>
> based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. Importantly, [this C]ourt should not find that a trial court abused its discretion merely because [we] disagree[ ] with the trial court's conclusion. Indeed, "when reviewing the trial court's exercise of discretion, it is improper for [this C]ourt to 'step[ ] into the shoes' of the trial judge and review the evidence *de novo*." In other words, [this C]ourt "may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court."

***Commonwealth v. Gill***, 206 A.3d 459, 467 (Pa. 2019) (citations and some quotation marks omitted).

We agree with the trial court that Appellant's challenges to the weight of the evidence are without merit. ***See*** Trial Ct. Op. at 7. Although he claims that both Clay's and Officer Heuser's identifications are unreliable "as a matter of law[,]" he cites no authority to support this contention. Appellant's Brief at 19-20. Instead, Appellant relies entirely on Clay's mental health issues and argues Officer Heuser "was not qualified" to identify him. We disagree. Regarding Clay's testimony, the trial court opined:

> At the time of the murder, [ ] Clay had known [Appellant] for at least seven years. Although [ ] Clay admitted to being high on

crack cocaine on the day of the murder, she testified that, in all her years using that drug, it never rendered her unable to recognize someone she knew. The jury heard that [ ] Clay's testimony during this trial was substantially identical to her recitation of events given to [ ] James immediately following the shooting, to homicide detectives on the day after the murder, during the preliminary hearing for this case, and at [Appellant]'s first trial. . . .

Trial Ct. Op. at 9 (record citations omitted). We discern no abuse of discretion in the trial court's conclusion that Officer Heuser "knew [Appellant] exceptionally well[ and] was able to identify [him] in the video by [his] height, build, and 'pigeon-toed' walk. [The] identification by Officer Heuser, who had seen [Appellant] every day for eight months, was compelling evidence that [Appellant] was the shooter." *Id.* at 8.

We emphasize the jury heard Clay's testimony that she was under the influence at the time of the shooting and the impact of her mental health on her ability to recognize faces. Likewise, the jury watched the same video footage in which Officer Heuser identified Appellant. The jury considered Clay's testimony and found her credible. We decline to substitute our credibility determinations for that of the jury. *See Jacoby*, 170 A.3d at 1078; *see Lyons*, 79 A.3d at 1067.

Appellant also claims the Commonwealth failed to present physical evidence or evidence of motive. To the contrary, the Commonwealth presented the hoodie the shooter was wearing and the surveillance video which allowed the jury to compare the hoodie confiscated from Appellant to that of the shooter depicted in the video. Ultimately, it was up to the jury to

compare the video depiction to the actual hoodie in order to render its decision. Furthermore, as the trial court opined, the Commonwealth is not required to present physical or motive evidence to sustain its burden. *See Commonwealth v. Stays*, 70 A.3d 1256, 1266 (Pa. Super. 2013) (Commonwealth may present wholly circumstantial evidence to sustain its burden) (citation omitted); *Commonwealth v. Briggs*, 12 A.3d 291, 340 n.44 (Pa. 2011) (Commonwealth is not required to prove motive "even where the offense charged is murder in the first degree") (citation omitted); Trial Ct. Op. at 8. Appellant ignores this law in his brief. The jury's verdict was supported by the evidence and does not shock one's sense of justice. Thus, Appellant failed to demonstrate how the trial court abused its discretion in denying his challenge to the weight of the evidence. *See Gill*, 206 A.3d at 467; *Lyons*, 79 A.3d at 1067. No relief is due.

We address Appellant's final two claims together as they both pertain to the alleged ineffective assistance of counsel. Appellant states first that, unrelated to this matter, Attorney Kramer was disbarred in 2019. Appellant's Brief at 38, *citing ODC v. Kramer*, 127 DB 2017 (Pa. 2019). Appellant argues Attorney Kramer failed to object to the admission of Officer Lewis's testimony, regarding the "handwritten note" that James gave him, based on hearsay and Confrontation Clause grounds. Appellant's Brief at 32. Appellant also maintains Attorney Kramer was ineffective for failing to object when the Commonwealth relied on this evidence and made improper statements in its closing argument. *Id.* at 33, 35-36. Appellant maintains the trial court should

have addressed these claims at the August 16, 2021, PCRA hearing, contending Attorney Kramer's materials from the case have likely "been lost" after his disbarment and he is "reasonably less likely" to testify at a hearing. *Id.* at 31, 38-39.  No relief is due.

Generally, claims of ineffective assistance of counsel may only be raised in PCRA proceedings.  ***Commonwealth v. Holmes***, 79 A.3d 562, 563 (Pa. 2013).  Our Supreme Court has recognized two exceptions, both falling under the purview of the trial court's discretion:   (1) under "extraordinary circumstances where a discrete claim [of] ineffectiveness is apparent from the record and meritorious[;]" and (2) for non-record based claims, when there is "good cause shown" and the defendant gives "knowing and express waiver" of any further PCRA review of their conviction and sentence.  *Id.* at 563-64 (citations omitted).

The trial court concluded, and we agree, that Appellant's ineffectiveness claims do not fall into either of the above exceptions and thus, "there was no reason for the [trial c]ourt to hold a hearing on these claims." ***See Holmes***, 79 A.3d at 563-64; Trial Ct. Op. at 10.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/19/2022</u>