J-S47037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                       :            PENNSYLVANIA
                                         :
            v.                            :
                                         :
                                         :
EVANS BOUKNIGHT                :
                                         :
            Appellant               :     No. 3054 EDA 2023

Appeal from the Judgment of Sentence Entered October 6, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000873-2021

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                        **FILED MARCH 7, 2025**

Evans Bouknight ("Bouknight") appeals from the judgment of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of third-degree murder, persons not to possess a firearm, firearms not to be carried without a license, carrying a firearm on the streets of Philadelphia, and possession of an instrument of a crime.[1] Bouknight argues that the trial court abused its discretion by denying his request for a continuance of trial and purports to raise challenges to the sufficiency and weight of the evidence. After review, we affirm.

Bouknight's convictions stem from the shooting death of Almir Alwyn ("Alwyn") on September 18, 2016. On the day of the shooting,

_____

[1] 18 Pa.C.S. §§ 2502(c), 6105(a)(1), 6106(a)(1), 6108, 907.

Saleanna Baldwin [("Baldwin")] was visiting her grandmother on the 5600 block of Media Street in Philadelphia. While inside her grandmother's house, Baldwin heard a commotion outside, which caused her to go outside to investigate. Once outside, she observed [Alwyn, Evans Bouknight, Jr. ("Bouknight's Son")], and Abraham Camarra [("Camarra")] arguing. Quickly thereafter, the men began exchanging gunfire.

Alwyn was shot and fell to the sidewalk facedown but was still breathing. While Alwyn was on the ground, [Baldwin observed Bouknight approach] Alwyn from an unknown location, [stand] directly over top him, and [fire] one gunshot to Alwyn's head. [Bouknight] then handed the gun to his brother, Arthur Tilman, and left the scene.

At approximately 5:30 p.m. on September 18, 2016, police officers patrolling the police district observed pedestrians flagging them down and pointing to the 5600 block of Media Street. When they arrived at the 5600 block, they observed [Alwyn] lying on the sidewalk next to a car. Police observed blood on the ground and attempted to put [Alwyn] into a police cruiser. However, [Alwyn] was unresponsive and did not have a pulse, and when officers tried to move him, blood poured from his head. Medics arrived minutes later and pronounced [Alwyn] dead at the scene.

Trial Court Opinion, 2/8/2024, at 2-3 (footnotes and citations to the record omitted).

Because Baldwin was afraid to tell police directly what she observed, she left a note at the crime scene listing variations of the names of Bouknight, Bouknight's son, and Camarra. *See* N.T., 6/6/2023, 101-02; N.T., 6/7/2023, 126-35; Commonwealth Exhibit C-11 (note found at crime scene). Police did not know who left the note and the investigation eventually stalled. N.T., 6/7/2023, at 135-37.

On August 12, 2019, three years after the murder, Baldwin provided a statement to the police. *Id.* at 137. Baldwin told police that she was the

person who dropped the note at the scene.  *Id.* at 137-38; *see also* N.T., 6/6/2023, at 101-04.  She provided a statement describing the shootout and identifying Bouknight as the person who fired the last shot at Alwyn's head before she heard Alwyn take his last breath.  *See* N.T., 6/7/2023, at 137-38; N.T., 6/6/2023, at 85-97.

Police obtained a warrant for Bouknight's arrest, but did not execute the arrest warrant until August 2020, when police encountered Bouknight in Delaware County, Pennsylvania.  Bouknight was arrested and charged with the aforementioned crimes and first-degree murder.

At the conclusion of a five-day jury trial in June 2023, the jury acquitted Bouknight of first-degree murder but found him guilty of all other charges.[2] Bouknight filed a post-trial motion for extraordinary relief, wherein he sought a new trial based upon after-discovered evidence.  He averred that approximately a week-and-a-half prior to trial, defense counsel discovered a social media post by Baldwin mentioning that she had been involuntarily committed in July 2019, which prompted counsel to subpoena the records from the psychiatric hospital for the purpose of attacking her credibility at

---

[2]  Bouknight was originally represented by Attorney George Yacoubian and proceeded to trial in 2022.  After Attorney Yacoubian suffered a medical emergency on the second day of trial, the trial court declared a mistrial. Bouknight then retained Attorney Thomas Kenny as private counsel.  Attorney Kenny filed multiple pre- and post-trial motions on Bouknight's behalf and represented him at his 2023 jury trial.  After Attorney Kenny sought and obtained permission to withdraw as counsel prior to appeal, Attorney Earl Kaufmann was appointed to represent Bouknight on appeal.

trial. Motion for Extraordinary Relief, 8/16/2023, ¶ 10. Counsel received the medical records after trial and argued that the records established that, inter alia, one week prior to providing a statement to police in 2019, Baldwin was involuntarily committed to the psychiatric hospital. *See id.* ¶¶ 14-22. Counsel insisted that if he had these records prior to trial, the jury would have returned a different verdict because he could have cross-examined Baldwin more effectively, challenged Baldwin's competency to testify, or sought an expert to explain, based on the information contained in the records, her impaired ability to recollect events. *Id.* ¶¶ 23-25. The trial court denied the motion without prejudice and directed counsel to refile the motion post-sentence.

On October 6, 2023, the trial court sentenced Bouknight in the aggregate to thirty to sixty years in prison. Bouknight timely filed a post-sentence motion, which included the after-discovered evidence claim.[3] The

---

[3] The Case Records Public Access Policy of the Unified Judicial System of Pennsylvania ("Public Access Policy") requires attorneys to submit a Confidential Document Form with any filing containing mental health records. Public Access Policy, § 8.0(A)(3), available at https://www.pacourts.us/Storage/media/pdfs/20211230/165101-publicrecordspolicy2022.pdf (last accessed 2/11/2025). Thereafter, the Confidential Document Form is accessible to the public, but the records themselves generally are not. *See* Public Access Policy, § 8.0(C). Ordinarily, when certifying an electronic record to this Court on appeal, the prothonotary will submit the confidential documents separately and designate that portion of the record as one containing sensitive documents, thereby ensuring that the parties and court staff have access to the documents but that the records are not inadvertently disclosed to the public. Here, Attorney Kenny attached
*(Footnote Continued Next Page)*

trial court denied the motion. Bouknight timely filed a notice of appeal. Both he and the trial court complied with Pa.R.A.P. 1925.

Bouknight raises three issues on appeal:

1. Whether the trial court abused its discretion when it denied [Bouknight's] request for a continuance, a few days prior to trial, so that the defense could obtain the medical/mental health records of the sole eyewitness to the homicide of … Alwyn.

2. Whether the verdict was against the sufficiency of the evidence because the defense was unable to put into evidence the medical/mental health records of the sole eyewitness to the homicide of … Alwyn.

3. Whether the verdict was against the weight of the evidence because the defense was unable to put into evidence the medical/mental health records of the sole eyewitness to the homicide of … Alwyn.

Bouknight's Brief at 5 (unnecessary capitalization omitted).[4]

_____

the records that he received from the hospital to the motion for extraordinary relief and the post-sentence motion and submitted Confidential Document Forms with the motions containing the attached records. The electronic appellate record certified by the trial court prothonotary, however, appended the mental health records to the motions. It is not clear how and when this breakdown occurred, but we caution counsel and the trial court to follow the Public Access Policy and direct the trial court prothonotary to ensure that only the Confidential Document Forms and not the records themselves are appended to the motions in the certified electronic record.

[4] Notably, although Bouknight brushes up against the argument in his brief, none of Bouknight's issues assert that the trial court abused its discretion or erred by denying his motion for extraordinary relief or his post-sentence motion for a new trial. Thus, the question of the propriety of the trial court's ruling pertaining to Baldwin's mental health records is not squarely before us. We note, however, that the trial court took care to explain its reasoning as to why it concluded that the records were not relevant and why their discovery did not warrant a new trial. *See* Trial Court Opinion, 2/8/2024, at 3-6.

In his first issue, Bouknight argues that the trial court erred by refusing to continue his jury trial to afford him time to obtain Baldwin's records prior to trial. *Id.* at 12-13. Bouknight contends that eleven days prior to trial he filed a pretrial motion requesting a continuance to obtain the Baldwin's mental health records and that the trial court denied the motion in a June 2, 2023 order indicating that the June 5, 2023 trial date would remain. *Id.* at 11-12. The trial court and the Commonwealth assert that Bouknight never requested a continuance for the purpose of obtaining Baldwin's mental health records. Trial Court Opinion, 2/8/2024, at 3 n.5;[5] Commonwealth's Brief at 7-8. This is consistent with our review of the certified record.

In the pretrial motion referenced by Bouknight, he requested that the Commonwealth produce Booker's mental health records in discovery. Bouknight's Supplemental Omnibus Pre-trial Motion, 5/28/2023, at 4. There is nothing in the motion that could even arguably be construed as a request for a continuance. *See id.* at 3-5. Moreover, during the May 26, 2023 pretrial conference, defense counsel told the trial court that he was attempting to

_____

[5] As discussed by the trial court, Bouknight's concise statement indicates that the trial court denied his continuance request at the pretrial conference on June 2, 2023. Trial Court Opinion, 2/8/2024, at 3 n.5 (citing Bouknight's Concise Statement at 1). The portion of the transcript cited in Bouknight's concise statement, however, merely refers to the trial court's evidentiary ruling restricting references to Baldwin's involuntary commitment or mental health at trial. *See* N.T., 6/2/2023, at 25-32. Defense counsel did not mention the psychiatric records on the record that day, let alone request a continuance to obtain them. *See generally* N.T., 6/2/2023.

obtain the records from the Commonwealth through discovery or from the hospital through a subpoena, but expressly stated that he was not asking for a continuance to obtain the mental health records. *See* N.T., 5/26/2023, at 11; *id.* at 13 ("I am not asking for any continuances. That's not the issue. I am just alerting everyone, I have subpoenaed the records."); *id.* at 14 ("I am not asking for a continuance."). When the trial court asked defense counsel what, if anything, counsel was asking the court to decide, defense counsel responded that he was not asking the court to rule upon anything, as any discovery dispute was not ripe for the trial court to resolve at this point. *See id.* at 15; *see also* Docket Entry, 5/26/2023 (indicating that the parties would resolve the discovery request on their own). The transcript of the last pretrial conference on June 2, 2023, and the corresponding docket entry for that date indicate that all pretrial matters were resolved and that the trial would proceed on the scheduled trial date. *See* N.T., 6/2/2023, at 35; Docket Entry dated 5/2/2023 ("Final pretrial conference held. Defendant colloquied on new offer. Offer rejected. Court rules on Limine Motions. Trial date of 6/5/2023 Courtroom 1007 at 9:00am to remain.").

Bouknight argues that it was manifestly unreasonable for the trial court not to afford him additional time prior to trial to acquire Baldwin's mental health records, the eyewitness who testified that she saw him shooting Alwyn in the head. Bouknight's Brief at 13. For us to consider whether the trial court had abused its discretion in denying a continuance, it is necessary for

Bouknight to have requested a continuance in the first place. Because the record does not support the underlying factual predicate of Bouknight's argument, no relief is due on his first issue.

Bouknight's latter two issues do not fare any better, both because he failed to preserve challenges to the sufficiency and weight of the evidence and because he simply repackages his argument that the trial court erred by denying his alleged pretrial request for a continuance to obtain Baldwin's mental health records.

Beginning with his sufficiency claim, Bouknight has waived any challenge to the sufficiency of the evidence to support his conviction by not specifying the elements of the crimes that the Commonwealth failed to prove in his concise statement and in his brief. *See Commonwealth v. Bonnett*, 239 A.3d 1096, 1107 (Pa. Super. 2020). Additionally, he fails to develop his argument in his brief with citation to legal authority beyond the standard of review. *See* Pa.R.A.P. 2119(a); *see also Commonwealth v. Gibson*, 318 A.3d 927, 935 (Pa. Super. 2024).

Moreover, a challenge to the sufficiency of the evidence is a claim that "the evidence **admitted at trial** and all reasonable inferences drawn therefrom," was insufficient "to prove every element of the offense beyond a reasonable doubt." *Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (emphasis added). In addition to waiver, Bouknight's argument fails because he does not allege that the Commonwealth's evidence insufficiently

established the elements of the crimes for which he was convicted. Rather, he maintains that if the jury had "knowledge of relevant and crucial mental health records of [the] sole eyewitness," it "could have changed the entire verdict" to not guilty of all charges," thereby rendering the elements of all the crimes insufficient. Bouknight's Brief at 13-14. As Bouknight's argument does not challenge the sufficiency of the evidence "actually received," *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005), this issue as framed garners him no relief.

Turning to his challenge to the weight of the evidence supporting his conviction, Bouknight simply argues that his trial was "not fair" because the trial court denied his continuance request and deprived the jury of the opportunity to evaluate Baldwin's credibility with knowledge of her mental health issues and involuntary commitment. Bouknight's Brief at 14-15. This claim is waived because he did not first raise it before the trial court in a post-sentence motion or at sentencing. *See* Pa.R.Crim.P. 607(A); *Commonwealth v. Kinney*, 157 A.3d 968, 972 (Pa. Super. 2017). He also again waived this issue by failing to develop his claim in his brief with citation to authority beyond the standard of review. *See* Pa.R.A.P. 2119(a); *see also Gibson*, 318 A.3d at 935.

Even if not waived, his third issue fails because it does not challenge the trial court's exercise of discretion in evaluating the verdict against the weight of the evidence that was in fact introduced into the record. *See*

*Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000) (a challenge to the weight of the evidence examines the discretion of the trial court in evaluating the relative evidentiary weight of the facts presented at trial). This Court evaluates the trial court's exercise of discretion in evaluating the weight of the evidence and "does not answer for itself whether the verdict was against the weight of the evidence." *Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011).

Because Bouknight has waived and/or failed to establish the merit of any of his issues, we affirm Bouknight's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/7/2025

- 10 -